| | | | |
|---|---|---|---|
| PAUL ALSTON | 1126 | LOUIS ERTESCHIK | 5241 |
| KRISTIN L. HOLLAND | 10063 | HAWAI`I DISABILITY RIGHTS CENTER | |
| MAILE OSIKA | 9826 | 1132 Bishop Street, Suite 2102 | |
| GEORGE TRAN | 10911 | Honolulu, HI  96813 | |

Telephone: (808) 949-2922
Facsimile: (808) 949-2928
E-mail: louis@hawaiidisabilityrights.org

DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
E-mail:  paul.alston@dentons.com
         kristin.holland@dentons.com
         maile.osika@dentons.com
         george.tran@dentons.com

Attorneys for Plaintiff
HAWAI`I DISABILITY RIGHTS CENTER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| HAWAI`I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its constituents,<br><br>     Plaintiff,<br><br>vs.<br><br>CHRISTINA KISHIMOTO, in her official capacity as Superintendent of the State of Hawai`i, Department of Education; and PANKAJ BHANOT, in his official capacity as Director of the State of Hawai`i, Department of Human Services,<br><br>     Defendants. | Civ. No. _____<br><br><br>**COMPLAINT** |

## COMPLAINT

1.      Plaintiff the HAWAI`I DISABILITY RIGHTS CENTER ("**HDRC**") brings this Complaint on behalf of its constituents who are Hawai`i children and young adults diagnosed with Autism Spectrum Disorder ("**Autism**") and require some level of Applied Behavior Analysis ("**ABA**") services.

2.      Defendants, jointly and individually, are required to provide or accommodate ABA services for these constituents, but are failing to do so in violation of federal and state laws.

3.      Defendants, jointly and individually, discriminate against these constituents based on their Autism disability by systemically depriving them of the services they need.

4.      Defendants' actions, jointly and individually, have caused and continue to cause irreparable harm to Hawai`i children and young adults with Autism by, *inter alia*, blatant discrimination against them, relegating them to isolation, segregating them from the regular classroom, predetermining their education plans, and denying them access to medically necessary ABA treatment without accommodations, all of which contribute to diminished futures and entrench severe long-term disability.

1

5.     As a result of Defendants' illegal and discriminatory policies, thousands of children and young adults with Autism in Hawai`i are deprived of critical services in violation of their civil rights.

6.     HDRC seeks declaratory and injunctive relief to immediately enforce the rights of these Hawai`i children and young adults with Autism to obtain and access adequate ABA services across settings, particularly in a mainstream environment during school hours, as required by federal and state laws.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this case under 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343 (civil rights).

8.     Venue is proper in the District of Hawai`i pursuant to 28 U.S.C. §1391(b) because the events giving rise to Plaintiff's claims all occurred in this District.

## THE PARTIES

9.     HDRC brings this action in a representative capacity on behalf of its Hawai`i constituents through the age of 22 who have been diagnosed with the disability of Autism, and their parents or guardians.

10.     Defendant CHRISTINE KISHIMOTO is the current Superintendent of the State of Hawai`i, Department of Education ("**DOE**").  She is sued in her official capacity.

11.     DOE is the government agency responsible for administration of the public education system and Part B of the Individuals with Disabilities Education Act ("**IDEA**") program in Hawai`i.  20 U.S.C. §1400 *et seq.*

12.     Defendant PANKAJ BHANOT is the current Director of the State of Hawai`i, Department of Human Services ("**DHS**").  He is sued in his official capacity.

13.     DHS is the government agency responsible for administration of the Medicaid program in Hawai`i.

14.     Defendants have acted and continue to act at all times relevant in their official capacity under color of state law.

## PLAINTIFF'S FACTUAL ALLEGATIONS

15.     ABA is an intensive, individualized, environment-based, behavioral health service which needs to be administered across settings to effectively treat and support a child with Autism.

16.     A majority of students with Autism require some level of ABA services.

3

17.     ABA is an effective and often essential treatment for Autism, which results in substantial improvements in communication, amelioration of obsessive, aggressive, self-injurious behaviors, and social functioning that otherwise if not timely and intensively treated can lead to profound life-long disability.

18.     ABA is medically necessary for many individuals with Autism.

19.     ABA is also widely recognized as a superior method for teaching children with Autism and is a necessary component of an educational program for many children with Autism to make progress appropriate in light of their circumstances.

20.     When delivered by qualified providers with sufficient intensity in prescribed environments, ABA can significantly reduce, correct, or ameliorate the conditions of Autism and allow children and young adults meaningful educations, personal relationships, and possible independence as adults.

21.     ABA treatment plans typically require up to 40 hours per week of various intensive ABA therapies to be effective.

22.     State law requires that ABA be planned and overseen by a Licensed Behavior Analyst ("**LBA**") or some other qualified professional.  *See* Haw. Rev. Stat., Chapter 465D.

4

23. To be effective, an ABA treatment plan must typically be applied across settings rather than in isolation.

24. The administration of ABA therapies at school, at home, and in other settings is frequently medically necessary for Autistic children.

25. DHS is required by federal law to provide medically necessary ABA services to Medicaid-eligible individuals from birth through age 21, under the early and periodic screening, diagnostic, and treatment mandate ("**EPSDT**") of the Medicaid Act.

26. DHS's stated policy is that DOE, rather than DHS, will provide ABA services to Medicaid-eligible students with Autism during school hours.

27. DHS fails to ensure that medically necessary ABA is provided during the school day and effectively limits EPSDT recipients with Autism to the services provided by DOE in public schools.

28. DHS cannot limit medically necessary ABA services simply because of the location or time the treatment is needed (i.e., at school or during school hours).

29. DHS has the ultimate, non-delegable duty to comply with EPSDT and nothing in the Medicaid Act permits DHS to delegate its responsibility to others, like State agencies or health plans, although it may work with others to coordinate the delivery of medically necessary services.

30.     It is insufficient for DHS only to confirm that there is a payment mechanism available for another agency to be reimbursed for providing required services or that another agency claims to be providing the services.

31.     DHS does not ensure the required ABA services are actually provided to EPSDT recipient students by qualified treatment providers (such as LBAs) in DOE public schools.

32.     DOE is required to provide Hawai`i students with disabilities with a free and appropriate education ("**FAPE**"), pursuant to IDEA.

33.     DOE is also required to provide meaningful access to a public education by reasonable accommodations to its students with disabilities, pursuant to the Americans with Disabilities Act ("**ADA**").  42 U.S.C. § 12101 *et seq.*

34.     DOE receives federal funds and is required to provide meaningful access to a public education by reasonable accommodations to students with disabilities, pursuant to Section 504 of the Rehabilitation Act.  29 U.S.C. § 701 *et seq*.

35.     ABA services must be provided to students with Autism in the school setting in the least restrictive environment, enabling students to mainstream with other students.

36.     DOE may seek federal Medicaid reimbursement for medical services it provides to its EPSDT students during the school day.

6

37.     DOE does not provide medically necessary ABA services to its students during the school day.

38.     DOE prohibits private ABA providers from access to school campus to provide medically necessary ABA services to students with Autism during school hours.

39.     DOE denies private ABA providers such access even though the cost is covered by Medicaid or the student's private health insurance.

40.     DOE's refusal to reasonably accommodate medically necessary ABA services for its students with Autism during school is discrimination based on their disability.

41.     DOE does not provide adequate ABA services in schools and its limited special education and related services are insufficient to meet the needs of a student with Autism.

42.     The IDEA standard DOE follows to determine what services to deliver is an educational standard determined by educational personnel and not a medical standard determined by medical personnel, so DHS's attempted delegation of responsibility to deliver medically necessary care is flawed from the outset.

43.     According to DOE's statistics, there were over 1,900 students with Autism enrolled in Hawai`i public schools as of February 2018.

7

44.     DOE forces students with Autism to choose between (a) attending public school with little to no qualified ABA services and compromising their health, future, and ability to progress, or (b) withdrawing from public school to get the qualified ABA services they need.

45.     This ultimatum by DOE deprives children of the opportunity to mainstream as it forces them to forego public school to get the care they need.

46.     IDEA requires DOE to prepare an Individualized Educational Program ("**IEP**") for students with disabilities to provide them with a FAPE.

47.     Except in rare circumstances, DOE will not include or mention ABA services as part of an IEP for a student with Autism, even if a licensed professional (such as an LBA) has determined that ABA services are medically necessary.

48.     DOE has refused to even recognize students' Autism diagnoses when assessing students' needs during the development of an IEP.

49.     DOE has a policy to not consider or mention ABA services as a potential educational methodology or service for a student with Autism.

50.     DOE implements its School-Based Behavioral Health ("**SBBH**") program as the default special education or related health service for students with Autism.

51.     DOE's SBBH program is not administered by LBAs and is not ABA.

52.     DOE uses SBBH services as a preliminary intervention for students with Autism even when it knows a student is prescribed medically necessary ABA services.

53.     Even when the behavior of a student with Autism worsens in the SBBH program, DOE still does not assess for or recommend ABA services in an IEP.

54.     DOE ignores parents' requests for ABA services during school, and will not document such requests in students IEPs, even when presented with a recommendation for ABA from a medical doctor or some other qualified professional.

55.     According to DOE, only about 17.5 percent of DOE students with Autism have IEPs that include any type of ABA services.

56.     The percentage of students with qualified ABA services in their IEP is likely much lower than DOE reports because DOE does not use qualified LBAs to prepare or oversee ABA service plans.

57.     DOE directs unqualified, unlicensed personnel, including its special education teachers to make behavioral assessments and determine whether ABA should be included in an IEP.

9

58.     DOE directs its employees not to include or recommend ABA services in an IEP, regardless of their assessment or personal opinion regarding the student's needs.

59.     Even if ABA or similar services are included in an IEP, DOE's position is that such services do not need to be planned or supervised by licensed professionals.

60.     As a result of DOE's policies and practice, parents of children with Autism are forced to forgo their child's rights to FAPE and mainstreaming by withdrawing their child from public school to receive the ABA services they need, often at an expense they cannot afford.

61.     Defendants' actions, jointly and individually, have failed and continue to fail to provide children and young adults with Autism the same opportunities to participate in or benefit from state programming and services.

62.     As a whole, Defendants' failures to coordinate and ensure that adequate ABA services are provided to students with Autism is a systemic failure of the State, resulting in thousands of violations of civil rights day after day.

63.     Immediate intervention is necessary to make required ABA services available to students with Autism and to avoid continuing irreparable harm.

<u>HDRC as a Protection and Advocacy System</u>

64.     HDRC is a Hawai`i Domestic Nonprofit Corporation, registered in the Hawai`i as of July 7, 1977.

65.     HDRC is a Protection and Advocacy System organization ("**P&A**"), which operates in Hawai`i pursuant to federal law.  *See* Haw. Rev. Stat. § 333F-8.5.

66.     As a P&A, HDRC has a federal mandate and is authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals within the Hawai`i who are disabled or mentally ill.

67.     HDRC represents its constituents, which are the functional equivalent of members for purposes of associational standing.

68.     HDRC's constituents consist of individuals with disabilities and their families who are the beneficiaries of HDRC's activities and have many of the indicia of membership, including: representation on HDRC's Board of Directors, representation on the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Advisory Council, and the right to exercise a grievance procedure to assure that they have access to the P&A system.

69.     The interests HDRC seeks to protect in this lawsuit are germane to its purpose and mission as a P&A organization.

11

70.    HDRC brings this lawsuit on behalf of all persons in Hawai`i under the age of 22 who have been diagnosed with Autism and are recommended some level of ABA services to ameliorate their condition.  Many of these persons under age 21 are also eligible for services and coverage under Medicaid's EPSDT program.

71.    HDRC brings this action on behalf of its constituents to challenge the State's systemic policies that violate the rights of children and young adults with Autism in Hawai`i; no exhaustion of remedies is required.

72.    The identified constituents are entitled to reasonable accommodations for adequate ABA services, free from discrimination based on their disability.

73.    Defendants have acted, refused to act, and/or failed to act on grounds that apply generally to HDRC's identified constituents, such that declaratory and injunctive relief is appropriate to address the violations to them as a whole.

<u>Individual Constituents</u>

74.    HDRC's constituents (not individually named as Plaintiffs) would have standing to sue in their own right for the ABA services sought in this lawsuit because they have each been harmed by Defendants' failure to provide ABA services in a manner consistent with federal and state law.

75.     Constituent **K.K.T.** is a Medicaid recipient with Autism on Hawai`i Island.  He is prescribed 40 hours per week of ABA.  DOE refused to consider his parent's request for ABA in his IEP and refused to allow K.K.T.'s private ABA provider on campus.  K.K.T.'s mother obtained an independent evaluation, which found DOE's SBBH services were causing K.K.T. to regress.  K.K.T.'s parents recently pursued administrative remedies and, after three years of delay, DOE included limited ABA services on K.K.T.'s IEP.  K.K.T. also receives limited hours of Medicaid-covered ABA services after school.  K.K.T. does not get his full medically necessary ABA and continues to suffer ongoing irreparable harm to his academic and functional development.

76.     Constituent **K.N.T.**, K.K.T.'s younger brother, is also a Medicaid recipient with Autism on Hawai`i Island.  He is prescribed ABA but DOE refused to include ABA services in K.N.T.'s IEP and has also blocked K.N.T.'s private ABA provider from campus.  A DOE representative told K.N.T.'s mother that ABA could not be mentioned in an IEP service grid because it is "only a strategy."  K.N.T. is not receiving ABA during the school day, but receives limited hours of Medicaid-covered ABA services after school.  K.N.T. continues to suffer ongoing irreparable harm to his academic and functional development.

77.     Constituent **J.R.** is diagnosed with Autism.  DOE does not provide J.R. with ABA services in his IEP and has blocked  his ABA providers

access to provide him with medically necessary ABA services during the school day.  J.R. receives limited hours of ABA services after school, covered by his private health insurance.  J.R.'s developmental and behavioral problems have gone unaddressed by DOE and become more severe, resulting in otherwise avoidable suspensions and punishment.  J.R. continues to suffer ongoing irreparable harm to his academic and functional development.

78.    Constituent **G.C.** is diagnosed with Autism and prescribed 30 hours of ABA per week.  DOE refuses to include any ABA services on his IEP, despite his parent providing professional assessments that ABA is a critical treatment for his development.  DOE also blocks G.C.'s ABA providers from campus.  DOE told G.C.'s mother that she could either withdraw G.C. from school or pay a rental fee to use school property for G.C. to receive his ABA services on campus.  G.C.'s mother cannot afford to "rent" school facilities for G.C.'s ABA. G.C. does not receive any ABA during the day and continues to suffer irreparable harm to his academic and functional development.

79.    Constituent **G.M.** is a Medicaid recipient with Autism and other disabilities.  DOE refused to include ABA services on G.M.'s IEP for several years.  G.M.'s parents withdrew her from public school to attend a private clinic with a full time ABA program to receive the full 40 hours per week of medically necessary ABA.  G.M. is benefitting from her ABA program but is completely

14

segregated from other students and has not been able to access other educational services.  G.M. continues to suffer irreparable harm to her academic and functional development.

80.     Constituent **J.V.**'s Autism diagnosis was ignored by DOE for over four years.  DOE provided J.V. with a SBBH programming, but his behavior worsened year after year.  DOE finally recognized J.V.'s Autism diagnosis but did not consider or include ABA services on his IEP.  J.V. receives the same or similar SBBH programming and is not progressing in school.  J.V. continues to suffer irreparable harm to his academic and functional development.

81.     Constituent **D.C.** is Medicaid recipient with Autism.  DOE has refused to assess D.C. for IEP services.  DOE refuses to accommodate D.C. with the medically necessary ABA services he needs during school.  D.C.'s mother enrolled him at a private school for his ABA services during the school day.  D.C.'s mother now works three jobs to pay for D.C.'s private school and to make ends meet.

82.     Constituent **E.W.** is diagnosed with Autism and other disabilities.  DOE deprived him of ABA services for years.  DOE prohibited E.W.'s private providers from access to campus for medically necessary ABA services during the school day.  DOE also refused to include ABA services in E.W.'s IEP.  E.W.'s parents filed an administrative claim and also involved

legislators to put political pressure on DOE's Superintendent.  After three years of E.W.'s parents' fierce advocacy for their son, DOE ultimately developed an IEP for E.W. that included ABA services; this shows that the DOE is capable of doing so but unwilling unless politically pressured.

## COUNT I
## VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
## AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12101)
(Against DOE and DHS)

83.    HDRC incorporates each and every allegation above as though fully set forth herein.

84.    HDRC's constituents are qualified individuals with disabilities under the ADA in that their Autism is a physical or mental impairment that substantially limits one or more major life activities.

85.    Defendants, jointly and individually, have violated the civil rights of these constituents pursuant to the ADA by failing and refusing to make reasonable accommodations for them to access programs and services simply because they relate to their Autism.

86.    Defendants, jointly and individually, have violated the civil rights of these constituents pursuant to the ADA by using criteria and methods of administration that subject them to discrimination on the basis of their disability.

87.    Defendants, jointly and individually, have violated the civil rights of these constituents secured by the ADA by excluding and/or not affording

16

them an equal opportunity to participate in or benefit from services equal to that afforded others.

88.     Defendants, jointly and individually, have violated the civil rights of these constituents secured by the ADA by limiting them to aids, benefits, or services that are not as effective in affording equal opportunity to participate in Defendants' benefits and services as those afforded others.

89.     At all times, Defendants, jointly and individually, have violated the civil rights of these constituents secured by the ADA by not making reasonable accommodations, and denying meaningful access to a public benefit.

90.     HDRC's constituents suffer ongoing and irreparable harm as the result of Defendants' ongoing discrimination and violations and the harm will continue until and unless Defendants' conduct is declared unlawful and enjoined by this Court.  There is no adequate remedy at law.

## COUNT II
## VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
## SECTION 504 REHABILITATION ACT (29 U.S.C. § 701)
(Against DOE and DHS)

91.     HDRC incorporates each and every allegation above as though fully set forth herein.

92.     HDRC's constituents are qualified individuals with a disability under Section 504 of the Rehabilitation Act in that their Autism is a physical or mental impairment that substantially limits one or more major life activities.

17

93.     Defendants, jointly and individually, receive federal financial assistance for the relevant programs.

94.     Defendants, jointly and individually, have violated the civil rights of these constituents secured by Section 504 by failing and refusing to make reasonable accommodations for them to access Defendants' programs and services.

95.     Defendants, jointly and individually, have violated the civil rights of these constituents secured by Section 504 by utilizing criteria and methods of administration that subject them to discrimination on the basis of their disability.

96.     Defendants, jointly and individually, have violated the civil rights of these constituents secured by Section 504 by not affording them an equal opportunity to participate in or benefit from services equal to that afforded others.

97.     Defendants, jointly and individually, have violated the civil rights of these constituents secured by Section 504 by limiting them to aids, benefits, or services that are not as effective in affording equal opportunity to participate in Defendants' benefits and services as those afforded others.

98.     At all times, Defendants, jointly and individually, have violated the civil rights of these constituents secured by Section 504 by not making reasonable accommodations, and denying meaningful access to a public benefit.

18

99.    HDRC's constituents are suffering ongoing and irreparable harm by Defendants' violations and the harm will continue unless Defendants' conduct is declared unlawful and enjoined by this Court.  There is no adequate remedy at law.

## COUNT III
## VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
## MEDICAID ACT (42 U.S.C. §§ 1396)
(Against DHS)

100.    HDRC incorporates each and every allegation above as though fully set forth herein.

101.    DHS has violated, and is continuing to violate, the EPSDT mandate of the Medicaid Act by failing to provide and ensure access to medically necessary ABA services during school hours.

102.    DHS has improperly delegated its responsibility to provide ABA services to EPSDT recipients during the school day to DOE, despite knowing that DOE does not provide or accommodate ABA services for its students.

103.    DHS has violated, and is continuing to violate, the Medicaid Act by failing to coordinate a mechanism for ensuring the delivery of necessary services to students with Autism enrolled in DOE schools.

104.    The DHS policy deprives Medicaid recipients with Autism of their EPSDT rights under the color of state law in violation of 42 U.S.C. § 1983.

105.    HDRC's constituents are suffering ongoing and irreparable harm by these DHS violations and the harm will continue unless DHS's conduct is declared unlawful and enjoined by this Court.  There is no adequate remedy at law.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
## IDEA
(Against DOE)

106.    HDRC incorporates each and every allegation above as though fully set forth here.

107.    DOE has violated, and is continuing to violate, the IDEA by categorically failing to provide, or allow delivery of, ABA services to students with Autism through qualified professionals.

108.    DOE has violated, and is continuing to violate, the IDEA by not providing adequate ABA services to its students with Autism.

109.    DOE has violated, and is continuing to violate, the IDEA by prohibiting ABA service providers from campus to supply students with Autism with medically necessary ABA during school hours.

110.    DOE has violated, and is continuing to violate, the IDEA through its predetermination that ABA services are not to be included in IEPs.

111.    DOE has violated, and is continuing to violate, the IDEA by segregating students with Autism from the regular classroom.

20

112.   DOE has violated, and is continuing to violate, the IDEA by offering inadequate services to its students with Autism, without considering individualized assessments for qualified ABA services.

113.   DOE has violated, and is continuing to violate, the IDEA by failing to coordinate with DHS to set up a mechanism to ensure the delivery of necessary services for its students with Autism.

114.   As the result of the DOE policies, students with Autism who need ABA during the school day are deprived of a FAPE and forced into isolation.

115.   The DOE deprives Plaintiff's constituents of their IDEA rights under the color of state law in violation of 42 U.S.C. § 1983.

116.   HDRC's constituents are suffering ongoing and irreparable harm by DOE's violations and the harm will continue unless DOE's conduct is declared unlawful and enjoined by this Court.  There is no adequate remedy at law.

WHEREFORE, HDRC prays that this Court:

(a)   Enter a preliminary and permanent injunction to:

    i.   Direct DHS to provide adequate medically necessary ABA during school hours for Medicaid recipients;

    ii.   Direct DOE to allow private ABA providers onto campus to supply medically necessary ABA for students with Autism during school;

iii.    Direct DOE to individually evaluate (or re-evaluate) each student with Autism using a qualified professional (such as LBA) to determine whether ABA services should be included as part of a student's IEP; and

iv.    Direct immediate coordination between Defendants to ensure that all ABA services needed to provide a FAPE and comply with EPSDT are provided to students with Autism in Hawai`i;

(b)    Appoint a special master to coordinate and monitor Defendants' compliance with such injunctions;

(c)    Award declaratory relief that:

i.    DOE's refusal provide or accommodate medically necessary ABA services for children and young adults with Autism during school is discrimination in violation of the ADA and this violation entitles HDRC to relief under 42 U.S.C. § 1983 for violation of its constituents' civil rights;

ii.    DOE's refusal provide or accommodate medically necessary ABA services for children and young adults with Autism during school is discrimination in violation of Section 504 and this violation

entitles HDRC to relief under 42 U.S.C. § 1983 for violation of its constituents' civil rights;

iii.   DHS's failure to ensure EPSDT recipients have access to medically necessary ABA treatment services during the school day violates the Medicaid Act and this violation entitles HDRC to relief under 42 U.S.C. § 1983 for violation of its constituents' civil rights;

iv.   DHS's failure to ensure EPSDT recipients have access to medically necessary ABA treatment services during the school day is discrimination in violation of the ADA and this violation entitles HDRC to relief under 42 U.S.C. § 1983 for violation of its constituents' civil rights;

v.   DHS's failure to ensure EPSDT recipients have access to medically necessary ABA treatment services during the school day is discrimination in violation of Section 504 and this violation entitles HDRC to relief under 42 U.S.C. § 1983 for violation of its constituents' civil rights;

vi.   DOE's failure to provide or accommodate qualified ABA services on school campuses for students with Autism violates the IDEA

23

and this violation entitles HDRC to relief under 42 U.S.C. § 1983

for violation of its constituents' civil rights;

vii.    DOE's predetermined policy not to consider, provide, or

accommodate qualified ABA services as an educational service for

students with Autism violates the IDEA and this violation entitles

HDRC to relief under 42 U.S.C. § 1983 for violation of its

constituents' civil rights;

(d)    Award HDRC its reasonable attorneys' fees, costs, and expenses

under any applicable law; and

(e)    Grant such other and further relief as this Court deems just and

proper.

DATED:  Honolulu, Hawai`i, November 28, 2018.


      /s/ Maile Osika
PAUL ALSTON
KRISTIN HOLLAND
MAILE OSIKA
GEORGE TRAN
LOUIS ERTESCHIK
Attorneys for Plaintiff

24