IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| HAWAI`I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its constituents,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CHRISTINA KISHIMOTO, in her official capacity as Superintendent of the State of Hawai`i, Department of Education; PANKAJ BHANOT, in his official capacity as Director of the State of Hawai`i, Department of Human Services,<br><br>　　　　Defendants. | Case No. CV18-00465 LEK-RLP<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

## TABLE OF CONTENTS

I.      FACTUAL BACKGROUND ................................................................2

        A.      DHS Must Provide Medically Necessary ABA Under EPSDT ...........4

        B.      DHS Does Not Provide ABA During School Hours ...........................4

        C.      DOE Denies Students With Autism Access to Medically
                Necessary ABA Services During School ..............................................6

        D.      DOE has Predetermined Not to Include ABA in IEPs ........................6

        E.      Students With Autism Are Segregated ...............................................9

        F.      Defendants Prevent Students With Autism From Accessing
                ABA Services Across Settings ...........................................................10

        G.      Impact of Defendants' Policies on Individual Students .....................11

II.     LEGAL STANDARD ...................................................................................14

III.    ARGUMENT .................................................................................................15

        A.      HDRC is Likely to Prevail on the Merits ...........................................15

                1.      DOE's Refusal to Allow ABA Providers on Campus
                        Violates ADA and Section 504 ..................................................15

                2.      DHS's Delegation of ABA Services to DOE During
                        School Violates EPSDT, ADA, and Section 504 .....................19

                3.      DOE's Predetermined Policy Not to Consider ABA For
                        an IEP Violates IDEA ...............................................................21

                4.      Defendants' Combined Policies Prevent Students with
                        Autism From Access to Adequate ABA Services ....................26

        B.      Defendants' Violations Cause Ongoing Irreparable Harm .................28

        C.      The Balance of Equities Favors HDRC ..............................................28

        D.      Injunctive Relief is in the Public Interest ...........................................29

      E.     A Rule 65 Bond is Not Required ........................................................30

IV.    CONCLUSION.............................................................................................30

10112670\000001\109354087\V-6

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69,*
  815 F.3d 1195 (9th Cir.2016) ......................................................16, 18, 19, 21

*Alboniga v. Sch. Bd. of Broward Cty.,*
  87 F. Supp. 3d 1319 (S.D. Fla. 2015)...............................................................17

*Aliah K. v. Haw. Dep't of Educ.,*
  788 F. Supp. 2d 1176 (D. Haw. 2011)..............................................................28

*AMCO Prod. Co. v. Gambell,*
  480 U.S. 531 (1987)..........................................................................................28

*Blanchard v. Morton Sch. Dist.,*
  509 F.3d 934 (9th Cir. 2007) ...........................................................................15

*Board of Educ. of Hendrick Hudson Central Sch. Dist. Westchester
  Cty. v. Rowley,*
  458 U.S. 176 (1982)..........................................................................................18

*Burke by Burke v. Indep. Blue Cross,*
  171 A.3d 252 (Pa. 2017) ..................................................................................20

*Cedar Rapids Cmty. Sch. Dist. v. Garret F.,*
  526 U.S. 66 (1999)............................................................................................22

*D.B. v. Ocean Twp. Bd. of Educ.,*
  985 F.Supp. 457 (D.N.J. 1997), *aff'd,* 159 F.3d 1350 (3d Cir.
  1998) .................................................................................................................18

*D.R. v. Antelope Valley Union High Sch. Dist.,*
  746 F. Supp. 2d 1132 (C.D. Cal. 2010)............................................................28

*Daniel R.R. v. State Bd. of Educ.,*
  874 F.2d 1036 (5th Cir. 1989) ........................................................................10

*Deal v. Hamilton Cty. Bd. of Educ.,*
  392 F.3d 840 (6th Cir. 2004) .....................................................................23, 24

*Duvall v. Cty. Of Kitsap*,
    260 F.3d 1124 (9th Cir. 2001) ............................................................17

*L.M.P. ex rel. E.P. v. Sch. Bd.*,
    516 F. Supp. 2d 1294 (S.D. Fla. 2016) ..............................................24

*E.R.K. v. State Dep't of Educ.*,
    728 F.3d 982 (9th Cir. 2013) ..............................................................16

*Endrew F. v. Douglas Cty. Sch. Dist. RE-1*,
    137 S. Ct. 988 (2017)...................................................................21, 22

*Everett H. v. Dry Creek Joint Elementary Sch. Dist.*,
    5 F.Supp.3d 1167 (E.D. Cal. 2014) ...................................................15

*Howard G. v. Dep't of Educ.*,
    Civ Nos. 11-00523 DKW-KSC, 13-00029 DKW-KSC (D. Haw.
    May 17, 2018) ....................................................................................25

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003) ..............................................................30

*K.D. v. Dep't of Educ.*,
    665 F.3d 1110 (9th Cir. 2011) ............................................................23

*K.D. v. Oakley Union Elem. Sch. Dist.*,
    2008 U.S. Dist. LEXIS 9559 (N.D. Cal. Feb. 8, 2008) ......................29

*K.M. v. Tustin Unified Sch. Dist.*,
    725 F.3d 1088 (9th Cir. 2013) ............................................................18

*League of Wilderness Defenders v. Connaughton*,
    752 F.3d 755 (9th Cir. 2014) ..............................................................29

*Lofisa S. v. Dep't of Educ.*,
    U.S. Dist. LEXIS 160120 (D. Haw. Nov. 14, 2014) ..........................23

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir. 1980) ......................................................28, 29

*Katie A., ex rel. Ludin v. Los Angeles Cty.*,
    481 F.3d 1150 (9th Cir. 2007) ......................................................19, 20

*M.C. v. Antelope Valley Union High Sch. Dist.*,
   858 F.3d 1189 (9th Cir. 2017) ............................................................22

*M.R. v. Dreyfus*,
   697 F.3d 706 (9th Cir. 2012) ..............................................................14

*M.T.V. v. DeKalb Cty. Sch. Bd.*,
   446 F. 3d 1153 (11th Cir. 2006) .........................................................24

*Mark H. v. Hamamoto*,
   620 F.3d 1090 (9th Cir.2010) .............................................................16

*Mark H. v. Lemahieu*,
   513 F.3d 922 (9th Cir.2008) ...........................................................9, 17

*Melodee H. v. Dep't of Educ.*,
   U.S. Dist. LEXIS 39656 (D. Haw. May, 13, 2008)............................23

*Parents' League for Effective Autism Services v. Jones-Kelley*,
   565 F.Supp.2d 905 (S.D. Ohio 2008) .................................................29

*R.E.B. v. State Dep't of Educ.*,
   870 F.3d 1025 (9th Cir. 2017) ....................................................3, 8, 23

*R.L. v. Miami-Dade Cty. Sch. Bd.*,
   757 F.3d 1173 (11th Cir. 2014) ..........................................................23

*Rosie D. v. Romney*,
   410 F. Supp. 2d 18 (D. Mass. 2006)...................................................20

*Sabatini v. Corning-Painted Post Area Sch. Dist.*,
   78 F. Supp. 2d 138 (W.D.N.Y. Dec. 29, 1999) .................................28

*San Diego Cty. Office of Educ. v. Pollock*,
   2014 U.S. Dist. LEXIS 125403 (S.D. Cal. Sept. 8, 2014).................27

*Save Our Sonoran, Inc. v. Flowers*,
   408 F.3d 1113 (9th Cir. 2005) ............................................................30

*Suzanne Egan v. Rachel Wong*,
   Order (August 12, 2016)........................................................................4

v

*Tennessee v. Lane*,
541 U.S. 509 (2004)................................................................................18

*Timothy O. v. Paso Robles Unified Sch. Dist.*,
822 F.3d 1105 (9th Cir. 2016) ...............................................................22

*Townsend v. Quasim*,
328 F.3d 511 (9th Cir. 2003) ..................................................................20

*Van Scoy v. San Luis Coastal Unified Sch. Dist.*,
353 F. Supp. 2d 1083 (C.D. Cal. Jan. 5, 2005)......................................28

*W.G. v. Bd. of Tr. of Target Range Sch. Dist. No. 23*,
960 F.2d 1479 (9th Cir. 1992) ...............................................................23

*Watson v. Weeks*,
436 F.3d 1152 (9th Cir. 2006) ...............................................................15

## Statutes

20 U.S.C. § 1301 ...........................................................................................21

20 U.S.C § 1400 .............................................................................................30

20 U.S.C. § 1401 ...................................................................................1, 2, 21

20 U.S.C. § 1412 .........................................................................21, 22, 27

20 U.S.C. § 1414 ...........................................................................................22

20 U.S.C. § 1440 ...........................................................................................22

29 U.S.C. § 794 .............................................................................................16

42 U.S.C. § 1396 *et seq*..............................................................................4, 19

42 U.S.C. § 1902 ...........................................................................................27

42 U.S.C. § 1904 ...........................................................................................27

42 U.S.C. § 1983 ......................................................................................14, 15

42 U.S.C. § 12132 .........................................................................................15

Haw. Rev. Stat. Chapter 465D................................................................2, 3, 7, 25

Haw. Rev. Stat. § 432E-1.4.................................................................3

## Regulations

34 C.F.R. § 35.130 ............................................................................18

34 C.F.R. § 104.4 .............................................................................18

34 C.F.R. § 300.8 .............................................................................15

34 C.F.R. § 300.142 ..........................................................................27

34 C.F.R. § 300.154 ....................................................................26, 27

34 C.F.R. § 300.301 ..........................................................................22

34 C.F.R. § 300.304 ..........................................................................22

34 C.F.R. § 300.600 ..........................................................................27

42 C.F.R. § 431.107 ..........................................................................27

42 C.F.R. § 440.230 ..........................................................................19

## MEMORANDUM IN SUPPORT OF MOTION

ABA is the most effective and widely recognized treatment for Autism. It has both educational and medical components that are not limited to a particular time or setting. DHS abdicates and delegates to DOE its EPSDT responsibilities to provide medically necessary ABA to Medicaid recipients during school hours. DOE blocks access to medically necessary ABA in Hawai`i's public schools, refuses to include educationally relevant ABA in individualized education programs for students with Autism,[2] and offers inadequate services to its students with Autism in lieu of ABA. Because of Defendants' failing policies, students with Autism must withdraw from public school and forgo a mainstream education with their peers to access medically necessary ABA services. This impacts more than 1,900 students with Autism in Hawai`i and injunctive relief is urgently needed to ensure the services they are entitled to under federal law. HDRC, on behalf of its constituents, seeks immediate injunctive relief as follows:

1) DHS must provide adequate medically necessary ABA during school hours for Medicaid recipients;

---

[2] An "**IEP**" is an "individualized education program" prepared for a student with a disability, such as Autism. *See* 20 U.S.C. § 1401(14) (defining IEP as "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with [IDEA].").

2) DOE must allow private ABA providers onto campus to supply medically necessary ABA for students with Autism;

3) DOE must individually evaluate (or re-evaluate) each student with Autism using a qualified professional[3] to determine whether ABA services should be included as part of a student's IEP;

4) Defendants must work together to ensure that all ABA services necessary to provide a FAPE[4] and to comply with EPSDT are provided to students with Autism.

## I.   FACTUAL BACKGROUND

Autism is a developmental disability that can cause significant social, communication, and behavioral challenges.  There is no cure.[5]  As many as 1 in 59 children are diagnosed with Autism.[6]  ABA is one of the few scientifically valid treatments for Autism endorsed by the U.S. Surgeon General.[7]  "ABA encourages positive behaviors and discourages negative behaviors in order to improve a variety of skills[,]" and "[t]he child's progress is tracked and measured."[8]

---

[3] Such as a Licensed Behavior Analyst ("**LBA**"), as defined in Haw. Rev. Stat. Chapter 465D (Behavior Analysts).

[4] A "**FAPE**" is a Free Appropriate Public Education.  20 U.S.C. § 1401(9).

[5] CDC, https://www.cdc.gov/ncbddd/autism/index.html (11/26/2018) ("**CDC Website**"), Basics; *Id.*, Treatment.

[6] CDC Website, Data and Statistics (per CDC's Autism and Developmental Disabilities Monitoring Network).

[7] *See* Nat'l Inst. of Mental Health, Mental Health: A Report of the Surgeon General 164 (1999), https://profiles.nlm.nih.gov/ps/access/NNBBHS.pdf.

[8] CDC Website, Treatment; *See also* Haw. Rev. Stat. § 465D-2 (ABA means "interventions that are based on scientific research and the direct observation and measurement of behavior and the environment.").

An average recommendation for medically necessary[9] ABA is 20-40 hours per week.[10]  In addition to being medically necessary for some children, ABA is also "widely recognized as a superior method for teaching children with [A]utism."[11]  Medically necessary and educationally relevant ABA overlap and are difficult to distinguish.[12]  To be effective, ABA must be administered in mainstream community settings such as at home, at school, and other places (*i.e.*, administered "across settings").[13]  ABA services also must be planned and overseen by a LBA and administered by a qualified person to be effective.[14]

---

[9] "Medical necessity" means "A health intervention is medically necessary if it is recommended by the treating physician or treating licensed health care provider…and is…[f]or the purpose of treating a medical condition[.]"  Haw. Rev. Stat. § 432E-1.4.

[10] *See* Declaration of Amanda Kelly, PhD, BCBA-D, LBA ("**Kelly Decl.**"), ¶39 (describing ABA).

[11] *R.E.B. v. State Dep't of Educ.*, 870 F.3d 1025, 1029 (9th Cir. 2017) *en banc reh'g denied, panel reh'g granted R.E.B. v. State Dep't of Educ.*, 886 F.3d 1288 (9th Cir. 2018); *See also* Kelly Decl., ¶¶34, 42, 43.

[12] *See* Declaration of Maile Osika ("**Osika Decl.**"), **Exhibit 21** (Pollak, *Is Applied Behavioral Analysis Education, Medicine, or Both?*, 2016); *See id.,* **Exhibit 4** (DOE Status Report, 1/5/2018), p.2, ¶2 (medically necessary ABA and "educationally relevant" ABA are "considered duplicative.").

[13] Kelly Decl., ¶45.

[14] *See e.g.* Haw. Rev. Stat. § 465D-2.  DOE argues that the "scope of practice of teachers and other professionals overlap with the practice of behavior analysis[,]" and they are exempt from the State law requiring that only LBAs engage in the practice of ABA.  *See* **Ex. 4** (DOE Status Report, 1/5/2018), p.1, ¶1.

### A.      DHS Must Provide Medically Necessary ABA Under EPSDT

Two years ago this Court ordered DHS to notify parents of minors with Autism that ABA is covered under Medicaid's EPSDT program when it is medically necessary.[15]  DHS relied on systematic barriers to deny such coverage and "delayed in instructing Medicaid health plans to cover [ABA], despite the [EPSDT] mandate, 42 U.S.C. § 1396 *et seq*., and despite recognizing ABA treatment's effectiveness and qualification for Medicaid coverage."[16]  This Court held that DHS's "current policy concerning Medicaid coverage of ABA is permanent[,]" with "no reasonable likelihood that [DHS] will reverse its position in the future."[17]  In October 2016, DHS posted a memo on its website confirming that ABA is a covered treatment for EPSDT recipients when medically necessary.[18]

### B.      DHS Does Not Provide ABA During School Hours

DHS delegates its responsibility to provide medically necessary ABA to EPSDT recipients during school hours to DOE.[19]  The DHS policy is:

---

[15] *J.E., through his parent Suzanne Egan v. Rachel Wong*, 1:14-cv-00399-HG-KJM, Order (August 12, 2016), p.46 of 50 (the "**Egan Case**").  *See* Osika Decl., ¶¶3-6, **Exhibit 1** (the "**Egan Order**").

[16] *Id.* at pp. 41-45 of 50.

[17] *Id.*

[18] Osika Decl., **Exhibit 2** (DHS Notice, 10/2016).

[19] As of April 2018, DHS reported that there 232 Medicaid recipients receiving Medicaid coverage for ABA services and that there were a total of 60 billing ABA providers.  Osika Decl., **Exhibit 9** (DHS HUIPA, 4/4/2018).

4

> …**DOE may provide ABA or ABA-like services to a beneficiary while in school as it relates to a child's educational needs**. If justification is provided indicating the ABA service is medically necessary and approved by the health plan, **the health plan will be responsible to provide and cover ABA services before or after school and when school is not in session**. The Early Intervention Program (EIP) may provide IBT services to its EIP beneficiaries aged 0 to three and will transition Medicaid recipients from EIP to QI health plans to cover ABA services. **[DHS] will reimburse these state agencies for ABA services provided to Medicaid beneficiaries**.[20]

DHS denies that this policy limits Medicaid coverage of ABA services for EPSDT recipients.[21]  Yet, it does nothing to ensure the delivery of medically necessary ABA to EPSDT recipients who attend public school during the day,[22] where DOE refuses to allow private ABA providers on campus and does not provide ABA services.[23]  DHS relies on an unsuccessful and inadequate "ABA-like"[24] program offered by the DOE to fulfill its EPSDT requirements during school hours.  Thus, EPSDT students with Autism who require ABA are forced to decide between a public education and necessary medical treatment.

---

[20] Osika Decl., **Exhibit 3** (DHS Memo, 5/31/2017), p.2 (bold emphasis added).

[21] *See* **Ex. 9** (DHS HUIPA, 4/4/2018), UIPA Summary, §B.

[22] *Id.*, §§C.1.-C.4.

[23] **Ex. 4** (DOE Status Report, 1/5/2018).  DHS has reported no school-based claims from DOE regarding Autism services.  *See* **Ex. 9** (DHS HUIPA, 4/4/2018).

[24] *See* **Ex. 3** (DHS Memo, 5/31/2017), p.2.  "ABA-like" is not defined by DHS, and likely refers to DOE's SBBH program (described below at Section D), which is not a valid ABA methodology.

### C.     DOE Denies Students With Autism Access to Medically Necessary ABA Services During School

DOE prohibits private ABA providers from entering DOE campuses

to administer medically necessary ABA for students with Autism:

> The treatment team does not decide whether a student requires ABA services for educational purposes which is a decision reserved for the IEP team…[DOE] is not required to implement a student's medically-related treatment plan.  It is a [DOE] policy not to allow private providers on campus as it would **interfere with the school's obligation to implement a student's IEP and to provide special education and related services under the IDEA**.[25]

DHS entrusts DOE to provide or accommodate medically necessary ABA but

DOE's policies force students with Autism who need ABA to sacrifice medical

treatment to attend school - a senseless and unlawful ultimatum.

### D.     DOE has Predetermined Not to Include ABA in IEPs

DOE also does not provide adequate educationally relevant ABA for

students with Autism.  DOE often refuses to provide an IEP to a student diagnosed

with Autism.[26]  And, when an IEP is provided, DOE funnels students with Autism

through its amorphous "School-Based Behavioral Health program" ("**SBBH**") as a

---

[25] Osika Decl., **Exhibit 4** (DOE Memo, 1/5/2018), p.3 (emphasis added).

[26] *See* Rogers Decl., ¶¶17-18.  Students with Autism or behavior issues are often initially provided with a Section 504 Plan and not an IEP.  *See Id.*, ¶19.

6

primary intervention.[27]  SBBH is not ABA.[28]  DOE will not consider ABA (which it considers to be an "intensive program") for an IEP unless and until the SBBH program and its "positive behavioral interventions" fail and the student exhibits what DOE considers to be "severe behavior needs."[29]  This is likely because DOE seeks to avoid the cost of ABA services, which would require hiring professionals who are qualified to provide them.[30]

Instead, DOE requires an "IEP team" (*i.e.*, special education teachers and other non-qualified personnel) to determine what services are "educationally

---

[27] *See* Ex. 4 (DOE Status Report, 1/5/2018), p.7 (SBBH "[p]rovides variety of school based behavioral health and educational support services to students…"). *See* Osika Decl., **Exhibit 5** (DOE Memo, 2/13/2018), p.3 (SBBH "provides a focused and responsive system of evidence-based behavioral and mental health interventions to ensure the health and well-being of students who have social, emotional or behavioral concerns that impact learning.").

[28] For example, a SBBH "specialist" is not a LBA with any specialized training in working with Autism but, rather, "a masters level mental health professional who provides mental and behavioral health counseling and intervention services supporting all students." Osika Decl., **Exhibit 11** (DOE Testimony, 4/4/2018), p.2. Only LBAs and certain other professionals can assess individuals for, recommend, and oversee ABA services. *See* Haw. Rev. Stat. Chapter 465D.

[29] **Ex. 4** (DOE Status Report, 1/5/2018), p.1, ¶1.a.; **Ex. 11** (DOE Testimony, 4/4/2018), p.3 ("licensure requirements for [DOE] should be limited to practitioners designing and implementing an [ABA] program for students who exhibit extreme behaviors and for whom less intensive interventions were unsuccessful."). Not all students with Autism exhibit problematic behavior under DOE's standards, which means students are often not considered for IEPs despite professional determinations that they need ABA in school. Kelly Decl., ¶53.

[30] *See* **Ex. 11** (DOE Testimony, 4/4/2018), p.2.

7

relevant" for the student.[31]  These persons are not LBAs and, thus, not qualified to assess for ABA.  Unsurprisingly, ABA is not included on IEPs.  This is notwithstanding that ABA is widely regarded as a "superior teaching method" for students with Autism.[32]  Even if ABA is medically necessary, a parent requests ABA, or a parent provides the IEP team with an independent assessment from a qualified LBA recommending ABA services in school, DOE will not include ABA in an IEP unless and until the student "fails" the SBBH program.[33]

At the beginning of 2018, DOE reported that it had approximately 1,909 students with Autism enrolled in public schools.[34]  DOE identified approximately 1,000 students with Autism who "may also require ABA as an IEP

---

[31]**Ex.4** (DOE Status Report, 1/5/2018), p.3.  The Hawai`i State Teachers Association reported that DOE "threatened [some teachers] with termination for refusing to complete behavioral diagnoses for which they have no professional training."  Osika Decl., **Exhibit 12** (HSTA Testimony, 4/4/2018).  The IEP team usually does not include any person qualified to determine whether a student needs ABA.  Kelly Decl., ¶55.  In January 2018, DOE reported that it only employed 15 LBAs. **Ex.4** (DOE Status Report, 1/5/2018), p.4.

[32] *See R.E.B.*, 870 F.3d at 1029; *See also* Kelly Decl., ¶¶34, 42.

[33]  *See supra* note 26; *See e.g.*, Declaration of Alison Villiarimo, ¶¶ 18-25.

[34] Osika Decl., **Exhibit 11** (DOE Testimony, 4/4/2018).  Because this is a DOE statistic and DOE does not always recognize Autism diagnoses, the total number of students with Autism may be much higher.  Kelly Decl., ¶52.

service."[35]  DOE concedes that 82.5% of its students with Autism (approximately

1,575 students) do not receive "ABA services" as part of their IEP.[36]

### E.    Students With Autism Are Segregated

"Hawai`i has long struggled to provide adequate services to special

needs students in compliance with state and federal law."[37]  In February 2018,

DOE was ranked the worst in the country for segregating 63.2% of its disabled

students from the regular classroom.[38]  And such students who are not

mainstreamed (*i.e.*, educated with children without disabilities) "[receive] less

---

[35] **Ex.4** (DOE Status Report, 1/5/2018). And there are exceptional circumstances where students with Autism have successfully obtained ABA services as part of their IEP, most often after years of relentless advocacy by their parents. White Decl., ¶¶27-29.

[36] **Ex. 11** (DOE Testimony, 4/4/2018).  These 335 students reportedly receiving "ABA services" may actually be receiving services prepared by a non-LBA, which is not adequate ABA at all.  *See* Kelly Decl., ¶57.

[37] *See Mark H. v. Lemahieu*, 513 F.3d 922, 926 (9th Cir.2008) (describing the 1994 *Felix* class action and DOE's subsequent efforts to meet educational and mental health needs of special education students, noting specifically that "Autistic children fall within the *Felix* class.").

[38] Osika Decl., **Exhibit 20** (Nat'l Council on Disability Report, 2/7/2018), pp.49-50;  *See also* Osika Decl., **Exhibit 15** (U.S. Dep't of Edu. Charts, 4/4/2017), p.4 (548 students with Autism ages 6-21 spend less than 40% of the day in regular class).  This segregation rate appears even higher for students with Autism than other students with disabilities.

9

instruction, [have] fewer opportunities to learn, and fewer opportunities to use knowledge and skills during instruction and other meaningful activities."[39]

### F. Defendants Prevent Students With Autism From Accessing ABA Services Across Settings

ABA is most effective across settings in the mainstream community, as determined by a child's treating LBA, *e.g.*, at home, school, or in other places where a student with Autism spends time and interacts with others.[40] Defendants do not coordinate with one another to provide ABA services to students with Autism in and out of school. In February 2018, DOE reported that it "hopes to begin Medicaid reimbursement processing [for ABA] by Spring 2018."[41] On March 21, 2018, Defendants reported to the State Legislature that they were "collaboratively working together to maximize Medicaid reimbursements. . .[,]" indicating there was still no reimbursement mechanism in place.[42] It is now Winter

---

[39] **Ex. 20** (Nat'l Council on Disability Report) p.39. *See Daniel R.R. v. State Bd. of Educ.,* 874 F.2d 1036, 1039 (5th Cir. 1989) ("Educating a handicapped child in a regular education classroom with nonhandicapped children is familiarly known as 'mainstreaming[.]'").

[40] Kelly Decl., ¶41; *See* Osika Decl., **Exhibit 22** (BACB Practice Guide), p.17 ("No ABA model is specific to a particular location and all may be delivered in a variety of settings, including residential treatment facilities, inpatient and outpatient programs, homes, schools, transportation, and places in the community.").

[41] **Ex.5** (DOE Memo, 2/13/2018).

[42] Osika Decl., **Exhibit 8** (Joint Letter, 3/21/2018).

2018, and still nothing.[43]  Further, it is unclear what a reimbursement system would look like; DOE acknowledges that it does not employ enough LBAs to provide ABA services for the students who need them.[44]  The most immediate and effective solution would be for DOE to allow private ABA providers on campus for medically necessary ABA.

### G.    Impact of Defendants' Policies on Individual Students

There are thousands of students with Autism affected by Defendants' illegal policies, all of whom are constituents of HDRC.[45]  HDRC worked for years to resolve these issues with Defendants but constituents continue to ask how to access ABA through the Medicaid program.[46]  HDRC submits herewith the declarations of seven parents who, with their children, personally experienced Defendants' illegal policies and the irreparable and ongoing harm they caused.

**K.K.T.** is a Medicaid recipient with Autism, prescribed 40 hours per week of medically necessary ABA.[47]  DOE refused to consider his parent's request

---

[43] *See* Kelly Decl., ¶20; **Ex.13** (Senate Resolution 81, 2018).

[44] **Ex.11** (DOE Testimony, 4/4/2018) (reporting 15 LBAs and 9 RBTs).

[45] HDRC is the designated Protection and Advocacy ("**P&A**") System for the State of Hawai`i, authorized by Congress to defend the civil rights of people with disabilities and has standing to maintain an action on behalf of its constituents. Declaration of Louis Erteschik; *See* **Ex.1** (Egan Order) at pp.21-22 of 50.

[46] Erteschik Decl., ¶¶19-38.

[47] *See* Declaration of Naomi Tachera, ¶¶ 2, 4, 14, 17, 23, 38, 76.

10112670\000001\109354087\V-6

for ABA and prevented K.K.T.'s private ABA providers from accessing K.K.T. on campus. An independent evaluation revealed that DOE's SBBH services were "reinforcing the challenging behaviors."

**K.N.T.** is a Medicaid recipient with Autism prescribed medically necessary ABA.[48] For over two years, DOE did not recommend or mention ABA services in K.N.T.'s IEP, despite his mother's requests. DOE also blocked K.N.T.'s ABA provider from campus. The IEP team affirmatively kept ABA off K.N.T.'s IEP and offered other DOE services instead. K.N.T. receives limited hours of Medicaid-covered ABA services after school.

**J.R.** is a 8-year-old with Autism.[49] J.R.'s private health insurance covers 30 hours per week of medically necessary ABA. DOE initially refused to recognize J.R.'s Autism diagnosis and has prohibited J.R.'s private ABA provider from access to campus. J.R. can only access 10 hours of ABA per week after school. He received an IEP in December 2017, but DOE will not include ABA.

**G.C.** is a 6-year old with Autism.[50] G.C. is prescribed 30 hours per week of ABA. For years, DOE has refused to include or mention ABA on G.C.'s IEP. DOE blocked G.C.'s ABA provider from campus. DOE told G.C.'s mother

---

[48] *See* Declaration of Naomi Tachera, ¶¶ 2, 4, 54, 65, 69, 70, 73, 76.
[49] *See* Declaration of Maile Rogers, ¶¶ 2, 3, 14, 31, 34, 35, 38, 39, 41.
[50] *See* Declaration of Christine Cosio, ¶¶ 2, 11, 16-23.

12

that she could either pay a rental fee to use classroom space for G.C.'s ABA

services at school or withdraw G.C. from school for him to receive ABA services

elsewhere.  G.C. does not receive any ABA during the day.

**G.M.** is an 11-year old with Autism and other disabilities.[51]  G.M. is a

Medicaid recipient and needs 40 hours per week of medically necessary ABA.

DOE refused to consider or include ABA in G.M.'s IEP.  G.M.'s parent enrolled

her in a private Autism clinic to access ABA.  Although G.M. is making significant

improvements with her ABA, G.M. is segregated from other students and is not

making any academic advancement.

**J.V.** is a 14-year old with Autism whose diagnosis was ignored by

DOE for years.[52]  Despite his parent's requests, DOE never mentioned, discussed,

or considered ABA as part of his IEP.  DOE consistently recommends its SBBH

program, despite J.V.'s notable regression.

**D.C.** is a 7-year old with Autism.[53]  DOE delayed and denied

evaluating D.C. for Autism, despite his behavioral issues and several professional

diagnoses for Autism.  D.C.'s mother enrolled him at a private school for his ABA

services, but now works three jobs to pay for it.

---

[51] *See* Declaration of Maureen McComas, ¶¶ 2, 5, 6, 11, 13-16, 21-25.

[52] *See* Declaration of Alison Villiarimo, ¶¶ 2, 18, 21, 22, 24, 25.

[53] *See* Declaration of Sheryl Cunningham, ¶¶ 2, 7-10, 11-13.

**E.W.** is a 6-year old with Autism and other disabilities.[54]  E.W. is prescribed 40 hours  per week of medically necessary ABA, but DOE blocked his ABA provider from campus.  His parents filed an administrative claim which settled on terms that E.W. could attend a private school to receive his ABA.  This segregated E.W. from other students.  His parents contacted local legislators to demand answers from DOE.[55]  In May 2018, DOE included ABA services in E.W.'s IEP.  E.W.'s experience shows that DOE can provide ABA services, but only after 3 years of parent advocacy, due process, and political intervention.

## II.   LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must establish that he is "[1] likely to succeed on the merits, [2] likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) (quotation omitted).

HDRC seeks to enforce its constituents' civil rights pursuant to 42 U.S.C. § 1983, which prohibits anyone acting under color of state law from depriving a person of "rights, privileges, or immunities" secured by the laws or the

---

[54] *See* Declaration of Jeanette White, ¶¶ 2, 11, 15-24.
[55] White Decl., **Exhibits 1** and **2** (Letters between DOE and Senator Donovan M. Dela Cruz).

Constitution of the United States.  42 U.S.C. § 1983.  "It provides remedies for violations of federal rights only where a federal statute creates an individually enforceable right in the class of beneficiaries to which [plaintiff] belongs." *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 936 (9th Cir. 2007) (citation omitted).  The EPSDT provision of the Medicaid Act, IDEA, ADA, and Section 504 create rights for disabled individuals that are enforceable through § 1983.  *See Watson v. Weeks*, 436 F.3d 1152, 1159 (9th Cir. 2006) (The Medicaid Act creates a private right of action enforceable by § 1983); *Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, 5 F.Supp.3d 1167, 1182 (E.D. Cal. 2014) (IDEA, ADA, and Section 504 are enforceable through a § 1983 action).

## III.   ARGUMENT

### A.   HDRC is Likely to Prevail on the Merits

#### 1.   DOE's Refusal to Allow ABA Providers on Campus Violates ADA and Section 504

Children with Autism are individuals with disabilities and the ADA and Section 504 both broadly protect them from discrimination where reasonable accommodations are available.[56]  DOE's ban of private ABA providers from its

---

[56]*See* 34 C.F.R. § 300.8(a)(1) (a child with autism is a "child with a disability"). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 provides "[n]o otherwise

(continued...)

campuses is an improper denial of medical services students with Autism need to enjoy meaningful access to the benefits of a public education.

A prima facie case under Section 504 "is identical [to ADA], except that the plaintiff must also prove that the relevant program receives federal financial assistance." *E.R.K. v. State Dep't of Educ.*, 728 F.3d 982, 992 (9th Cir. 2013).[57]  To prove a claim under ADA and Section 504 a plaintiff must show: (1) the individual is a qualified individual with a disability, (2) the individual was "denied a reasonable accommodation that [the individual] needs in order to enjoy meaningful access to benefits of public services," and (3) the program providing the benefit receives federal financial assistance.  *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir.2016) (quoting *Hamamoto*, 620 F.3d at 1097).  Prong two is satisfied by "showing that the federally funded program denied [] services [] needed to enjoy meaningful access to the benefits of a public education and that were available as reasonable accommodations."  *Id.* "[A] disabled individual may be denied 'meaningful access' to public education

_____

(...continued)

qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"  29 U.S.C. § 794(a).

[57] Although "linked" and "nearly identical," the Section 504 prohibition on discrimination against individuals with disabilities is construed "somewhat more broadly" than ADA.  *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir.2010).

when that education is not designed to meet her needs as adequately as the needs of other students are met." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 n.14 (9th Cir.2008) (citing 34 C.F.R. § 104.33). This does "not require substantive adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals," but "does require *reasonable* modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying 'meaningful access' to a benefit because of their disability." *Id.* at 937.

As a federal funds recipient,[58] DOE has no right to force its students with Autism to use the services *it* prefers (*i.e.*, its own SBBH program) in lieu of ABA. "[R]efusing [a] requested accommodation if it is reasonable in favor of one the [school district] prefers is akin to allowing a public entity to dictate the type of services a disabled person needs in contravention of that person's own decisions regarding his own life and care." *Alboniga v. Sch. Bd. of Broward Cty.*, 87 F. Supp. 3d 1319, 1341 (S.D. Fla. 2015) (school district required to make modifications to allow the use of a service animal for disabled student); *Duvall v. Cty. Of Kitsap*, 260 F.3d. 1124, 1139 (9th Cir. 2001) (inadequate accommodation where auditory aids provided to a disabled individuals without investigating

---

[58] *See* Osika Decl., **Exhibit 18** ("State foregoing millions in federal reimbursements," 8/19/2018).

individual need for video text display).  Accommodating qualified ABA services

would not impose an undue burden on DOE or fundamentally alter its program.

*Paradise Valley*, 815 F.3d at 1206 (an accommodation is reasonable if it can be

met "without fundamentally altering the nature of the program or activity[.]").  It is

DOE's burden to prove otherwise.  *K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d

1088, 1097-98 (9th Cir. 2013) ("[t]he public entity has the burden to prove that a

proposed action would result in undue burden or fundamental alteration[.]").

DOE's current policy forces students with Autism out of the

classroom to receive critical medical services that DOE could easily accommodate.

The "failure to accommodate persons with disabilities will often have the same

effect as outright exclusion."  *Tennessee v. Lane*, 541 U.S. 509, 531 (2004).  "[T]o

the maximum extent appropriate[,]" the education of a child with disabilities must

take place in the least restrictive environment with non-disabled peers (*i.e.*, in a

mainstream setting).  *See* 28 C.F.R. § 35.130(d); 34 C.F.R. § 104.4(b)(2).[59]  DOE's

discrimination against students with Autism is blatant, intentional, and exhibits

---

[59] IDEA "requires participating States to educate handicapped children with
nonhandicapped children whenever possible." *Board of Educ. of Hendrick Hudson
Central Sch. Dist. Westchester Cty. v. Rowley*, 458 U.S. 176, 202-03 (1982) (citing
20 U.S.C. § 1412(5)).  "This congressional mandate, also embodied in federal and
state regulations, is known as the 'mainstreaming,' 'inclusion,' or 'least restrictive
environment' requirement of IDEA." *D.B. v. Ocean Twp. Bd. of Educ.*, 985
F.Supp. 457, 471 (D.N.J. 1997), *aff'd*, 159 F.3d 1350 (3d Cir. 1998).

"deliberate interference" to their medical needs and federally protected rights. *Paradise Valley*, 815 F.3d at 1204. DOE must either accommodate the private ABA providers on campus or provide ABA as a special education or related service through licensed personnel.

### 2. DHS's Delegation of ABA Services to DOE During School Violates EPSDT, ADA, and Section 504

The EPSDT mandate requires DHS to provide any medically necessary service to Medicaid eligible children and young adults through age 21. *See* 42 U.S.C. §§ 1396d(a)(4)(B), 1396a(a)(43)(c), and 1396d(r)(5).[60] DHS must pay for and furnish required services with "reasonable promptness." 42 U.S.C. § 1396a(a)(8). It cannot refuse to do so simply because of the location or time the treatment is needed. *See Katie A., ex rel. Ludin v. Los Angeles Cty.*, 481 F.3d 1150, 1154 (9th Cir. 2007).[61] Further, DHS is not authorized to "prohibit or restrict, payment … for medical assistance for covered services furnished to a child with a disability because such services are included in the child's [IEP] established pursuant to [the IDEA]." 42 U.S.C. § 1396b(c). In other words, DHS's responsibilities exist regardless of whether its duties overlap with DOE's.

---

[60] *See* **Ex.1** (Egan Order) at pp.22-26 of 50 (discussing the Medicaid Program, the EPSDT mandate, and the medical necessity requirement).

[61] *See* 42 C.F.R. § 440.230(d) (a Medicaid agency may "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures," but any limitation must be reasonable).

19

"[C]hildren with serious emotional disabilities are among the most fragile members of our society; their medical needs frequently extend across a spectrum of service providers and state agencies." *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 24 (D. Mass. 2006) (state failed to provide children with adequate EPSDT services). DHS delegates responsibility to provide ABA services during school hours to DOE, knowing that DOE does not provide ABA services.[62] This policy is not based on an individualized determination of medical necessity and is an unreasonable limitation on services. DHS is ultimately responsible to ensure that the required services are actually provided. *Katie A., ex rel. Ludin*, 481 F.3d at 1159 ("Even if a state delegates the responsibility to provide treatment to other entities such as local agencies or managed care organizations, the ultimate responsibility to ensure treatment remains with the state.").[63]

Violations of the Medicaid Act may also establish violations of the ADA and Section 504. *See Townsend v. Quasim*, 328 F.3d 511, 517-18 (9th Cir.

---

[62]In 2017, the Supreme Court of Pennsylvania held that a health plan's refusal to pay for ABA services during school violated Pennsylvania's Autism Coverage Law which, like Medicaid's EPSDT requirement, broadly requires coverage of all medically necessary ABA services. It reasoned, "Autism is an environmentally sensitive form of therapy," and "[u]ltimately, we simply do not believe that the Legislature intended to permit insurers to exclude coverage in the sensory-laden educational environment where children spend large portions of their days[.]" *Burke by Burke v. Indep. Blue Cross*, 171 A.3d 252, 254 (Pa. 2017).
[63] The Medicaid health plans appear to be ready willing and able to provide ABA during school hours, but their providers are being blocked by DOE.

2003) (denial of services to Medicaid recipients was also violated ADA).  DHS's

delegation of its obligations to DOE effectively deprives EPSDT recipients of

"meaningful access" to medically necessary ABA.  *Paradise Valley*, 815 F.3d at

1204.  DHS refuses to make reasonable accommodations to ensure that Autistic

EPSDT recipients receive adequate services at school.  DHS must immediately

provide all Autistic EPSDT recipients with medically necessary ABA, even if that

means coordinating with DOE.

### 3.     DOE's Predetermined Policy Not to Consider ABA For an IEP Violates IDEA

The purpose of the IDEA is to give disabled children a free and

appropriate public education (FAPE) designed to meet their unique needs.  20

U.S.C. §§ 1301(25), 1412.  It provides federal funds to participating states to

implement uniquely tailored IEPs for eligible students.  20 U.S.C. §§ 1401(9)(D)

and 1412(a)(1).  An IEP must be based "on the unique circumstances of the child

for whom it was created[,]" and "reasonably calculated" to enable the child's

progress in both "academic and functional advancement."  *Endrew F. v. Douglas*

*Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999-1001 (2017).  It must be individually

"tailored" for a "complete picture of the child's functional, developmental, and

academic needs." *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1119 (9th Cir. 2016).[64]

The IDEA has both procedural and substantive compliance provisions. *M.C. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017).  Substantive compliance requires the school district to adequately evaluate a student and develop an IEP that is uniquely tailored to their needs.  *See* 20 U.S.C. §§ 1414(a)-(c); 34 C.F.R. §§ 300.301, 300.304(c).  Trained and knowledgeable personnel must conduct assessments based on valid and reliable measures.  *Timothy O.*, 822 F.3d at 1111.  Procedural compliance requires that the school district follow "IDEA's extensive and carefully drafted procedures."  *Id.* at 1118.  IDEA also expressly prohibits DOE from reducing medical services for EPSDT recipients.  20 U.S.C. §§ 1440(c), 1412(e).[65]

"A school district violates the IDEA if it predetermines placement for a student before the IEP is developed or steers the IEP to the predetermined

---

[64] A FAPE includes both "special education" and "related services." *Endrew*, 137 S. Ct. at 994.  The latter may include school health and medical services.  *See Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 73-75 (1999).

[65] *See* Osika Decl., **Exhibit 19** (CMS Memo, 12/15/2014), pp.3-4 ("nothing in the IDEA permits a state to reduce medical or other assistance available, or to alter eligibility, under Titles V (relating to maternal and child health) and XIX of the Social Security Act (relating to Medicaid for infants and toddlers with disabilities and to the provision of a [FAPE] to children with disabilities) in the state.").

placement." *K.D. v. Dep't of Educ.*, 665 F.3d 1110, 1123 (9th Cir. 2011).[66]

Pervasive and repetitive procedural violations indicate illegal predetermination.

*E.g.*, *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 859 (6th Cir. 2004)

(unofficial predetermined policy of refusing to consider ABA services). It is an

illegal "preexisting, predetermined" practice for a school to only advocate for one

program and not consider other alternatives, despite objections from the parents.

*W.G. v. Bd. of Tr. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir.

1992); *R.L. v. Miami-Dade Cty. Sch. Bd.*, 757 F.3d 1173, 1188 (11th Cir. 2014)

("[T]he state cannot come into an IEP meeting with closed minds, having already

decided material aspects of the child's educational program without parental

input.").

   ABA is an effective educational method for students with Autism.

*R.E.B.*, 870 F.3d at 1029  (ABA is a "superior method for teaching children with

autism."); *K.G.*, 981 F. Supp. 2d at 1287 ("ABA is an effective and significant

treatment[.]").  In *Deal v. Hamilton*, the Sixth Circuit affirmed that a school

district's "unofficial policy of refusing to provide one-on-one ABA programs" was

---

[66] *See also Lofisa S. v. Dep't of Educ.*, No. 12-00213 and 14-00071 2014, U.S. Dist. LEXIS 160120, at *16 (D. Haw. Nov. 14, 2014); *Melodee H. v. Dep't of Educ.*, No. 07-000256 2008, U.S. Dist. LEXIS 39656, at *27 (D. Haw. May, 13, 2008) ("Pre-determination of a child's placement is a violation of IDEA because it deprives the parents of meaningful participation in the IEP process.").

illegal predetermination because the school personnel "did not have open minds and were not willing to consider the provision of such a program." *Deal*, 392 F.3d at 858. There, the school district had "steadfastly refused even to discuss the possibility of providing an ABA program, even in the face of impressive results." *Id.* ABA was not treated as a "viable option" and nothing a student's parents said or data they produced, changed the school district's determination. *Id.*

Here, DOE is predetermined to reject ABA, regardless of individualized need, unless and until a student either actually "fails" or shows extreme behaviors.[67] It is unclear whether DOE's policy is based on a belief that its SBBH program is sufficient for all its students with Autism,[68] concerns of the

---

[67] Administrative remedies cannot correct this systemic wrong and would be futile on an individualized basis. *L.M.P. ex rel. E.P. v. Sch. Bd.*, 516 F. Supp. 2d 1294, 1305 (S.D. Fla. 2016) (failure to exhaust administrative remedies excused as to predetermination claims because they were not individualized FAPE challenges); *M.T.V. v. DeKalb Cty. Sch. Bd.*, 446 F. 3d 1153, 1159 (11th Cir. 2006) (exhaustion of administrative remedies is not required where futile or inadequate).

[68] The school district in *Deal* had a similar program that did not include ABA or accommodate individualized assessments, and that it had invested significant resources exclusively for the education of its students with Autism. *Deal*, 392 F.3d at 859. The court held, "the school district may not … decide that because it has spent a lot of money on a program, that program is always going to be appropriate for educating children with a specific disability, *regardless of any evidence to the contrary of the individualized needs of a particular child.*" *Id.* (emphasis in original). "A 'one size fits all' approach to special education will not be countenanced by the IDEA." *Id.*

cost to implement ABA programs, or merely that DOE is bound to its ways. [69]

DOE recognizes the "practice of behavioral analysis" is "valuable," but admits it does not have the capacity to provide ABA services to its students. [70]  DOE regularly ignores parent requests for ABA services, regardless of individualized professional assessments or recommendations for ABA.  It directs its unqualified teachers to suggest services and sometimes even refuses to recognize an Autism diagnosis.  The net effect is that students with Autism are not assessed for ABA services as part of their IEP.

DOE's refusal to implement, consider, or even mention ABA in IEPs is illegal predetermination with no individualized basis and, thus, a clear procedural violation of the IDEA.  DOE's predesigned one-size-fits-all approach, namely SBBH, ignores individual needs, making it a procedural roadblock for a meaningful FAPE and valid IEP.  DOE must acknowledge, discuss, and sincerely consider ABA as a viable treatment option for individual students with Autism.  This means using LBAs for valid assessments pursuant to State law.  *See* Haw.

---

[69] DOE's obligations to provide a FAPE for a student with Autism exist even if it does not want to provide ABA services.  *See e.g. Howard G. v. Dep't of Educ.*, Civ Nos. 11-00523 DKW-KSC and 13-00029 DKW-KSC (D. Haw. May 17, 2018) (parents of Autistic child entitled to reimbursement for five years of private education costs because DOE failed to provide a FAPE by refusing to consider recommendations for ABA services for inclusion in the student's IEP).

[70] **Ex.11** (DOE Testimony, 4/4/2018).

Rev. Stat. Chapter 465D.  DOE must immediately evaluate (or re-evaluate)

students with Autism using qualified LBAs for individualized assessments of

whether ABA services be included on a student's IEP, in compliance with the

IDEA.

> **4.    Defendants' Combined Policies Prevent Students with Autism From Access to Adequate ABA Services**

Defendants are unlawfully reducing or denying federally required

services.  Pursuant to the EPSDT mandate, DHS must provide services in whatever

location where they are medically necessary, including schools.  Medicaid is the

primary payor to schools and to IEP service providers under the IDEA.[71]  DHS

"may not disqualify an eligible service for Medicaid reimbursement because that

service is provided in a school context." 34 C.F.R. § 300.154(b)(1)(ii).  Likewise,

nothing in the IDEA permits a state to reduce medical or other assistance available,

or to alter eligibility relating to a disabled child's health, Medicaid services, or

FAPE.[72]  If an agency fails to provide or pay for a special education or related

service needed for a child to receive a FAPE, DOE must do so (as it is responsible

---

[71] *See* **Ex. 19** (CMS Memo, 12/15/2014), p.3.

[72] *Id.*, pp.3-4 (citing 20 U.S.C. §§ 1412(e), 1440(c)).

for developing the child's IEP), and seek reimbursement from the responsible

agency.  34 C.F.R. § 300.154(b)(2).[73]

Per conditions for IDEA funding, DOE must have interagency

agreements or other mechanisms for coordination with each non-educational public

agency that is legally obligated to provide or pay for any services that are also

considered special education or related services necessary for FAPE.  20 U.S.C.

§1412 (a)(12).[74]  Here, but for Defendants' lack of interagency coordination, ABA

services could have reached and treated these students years ago.  That harm

cannot be undone.  And despite a recent Legislative mandate to act,[75] Defendants

have not made ABA services available to students with Autism.

---

[73] *See also* 20 U.S.C. §1412(a)(11)-(12); 34 C.F.R. §§ 300.600(c), 300.142; *San Diego Cty. Office of Educ. v. Pollock*, No. 13-CV-1647-BEN, 2014 U.S. Dist. LEXIS 125403, *19 (S.D. Cal. Sept. 8, 2014) ("The IDEA requires that the State have a mechanism for interagency coordination between public agencies and the state educational agency, in order to ensure that certain services that are needed to ensure a [FAPE] are provided[.]").  EPSDT requires the same.  42 C.F.R. § 431.107; 42 U.S.C. §§ 1902(a)(4), 1904(a)(27).

[74] IDEA requires states to "ensure that an interagency agreement or other mechanism for interagency coordination is in effect…in order to ensure that all services …needed to ensure FAPE are provided[.]"  34 C.F.R. § 300.154(a).  This includes "any public agency other than an educational agency" that is "otherwise obligated under Federal or State law…to provide or pay for any services that are also considered special education or related services…that are necessary for ensuring FAPE to children with disabilities within the State[.]"  34 C.F.R. § 300.154(b)(1)(i).

[75] Osika Decl., **Exhibit 14** (Act 205, 2018), **Exhibit 13** (Senate Resolution, 2018).

### B.   Defendants' Violations Cause Ongoing Irreparable Harm

Defendants' illegal policies cause irreparable and continuing harm to all students with Autism in Hawai`i who need ABA services.  Irreparable harm means harm that cannot be adequately remedied by money damages and is permanent or at least is of long duration.  *AMCO Prod. Co. v. Gambell*, 480 U.S. 531, 545 (1987).  "[T]he threat of irreparable harm is actual and imminent."  *Aliah K. v. Haw. Dep't of Educ.*, 788 F. Supp. 2d 1176, 1195 (D. Haw. 2011).

Students with Autism in Hawai`i are being: (a) denied ABA services during critical developmental windows; (b) discriminated against; (c) denied access to medical services; and (d) segregated from a mainstream education because of their disability.  There is no dispute that the denial of a FAPE or denial of medically necessary services constitutes irreparable harm.[76]

### C.   The Balance of Equities Favors HDRC

In considering the balances of equities, the Court must "balance the interests of all parties and weigh the damage to each[.]"  *Los Angeles Mem'l*

---

[76] *Sabatini v. Corning-Painted Post Area Sch. Dist.*, 78 F. Supp. 2d 138, 143 (W.D.N.Y. Dec. 29, 1999) (denial of a FAPE over an extended period constitutes harm and the longer denial continues, the more irreparable it becomes); *D.R. v. Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d 1132, 1145 (C.D. Cal. 2010) (irreparable harm where minor forced to miss classes); *Van Scoy v. San Luis Coastal Unified Sch. Dist.*, 353 F. Supp. 2d 1083, 1087 (C.D. Cal. Jan. 5, 2005) (irreparable harm each day minor not provided appropriate services under IDEA and was "falling further and further behind on his educational goals.").

*Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

In doing so, the Court should "identify the harms which a [temporary restraining order or preliminary injunction] might cause to defendant[] and [] weigh these against plaintiff's threatened injury." *Id.* Here, there is no actual hardship to Defendants to carry out their legal responsibilities.

### D.      Injunctive Relief is in the Public Interest

In considering whether a preliminary injunction is in the public interest, the Court evaluates its impact on nonparties.[77] *League of Wilderness Defenders v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014).  Here, the financial burden of providing ABA services to students with Autism is not a true harm to Defendants because they are required to do so by law, and there are federal funds available for these services. *See Parents' League for Effective Autism Services v. Jones-Kelley,* 565 F.Supp.2d 905, 918 (S.D. Ohio 2008).  Moreover, for a student with a disability, the "continuing academic progress substantially implicates the public interest." *K.D. v. Oakley Union Elem. Sch. Dist.*, 2008 U.S. Dist. LEXIS

---

[77] *See* Osika Decl., **Exhibits 16, 17,** and **18** (recent mainstream news articles reporting on these issues).

9559 at 35, C07-00920 (N.D. Cal. Feb. 8, 2008).  Enforcement of civil rights

(EPSDT, IDEA, ADA, and Section 504) are matters affecting public interest.[78]

### E.     A Rule 65 Bond is Not Required

This Court has the discretion to forgo a Rule 65 bond when, as here,

"there is no realistic likelihood of harm to the defendant from enjoining" its

actions.  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Defendants

cannot be harmed by an order to comply with applicable federal and state laws.

*Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (no, or

nominal, bond may be appropriate in cases involving the public interest).

## IV.     CONCLUSION

Plaintiff respectfully requests that the Court issue a preliminary

injunction against Defendants to prevent ongoing irreparable harm, as set forth

herein.

DATED: Honolulu, Hawai`i, November 28, 2018.

     /s/ Maile Osika
     PAUL ALSTON
     KRISTIN HOLLAND
     MAILE OSIKA
     GEORGE TRAN
     LOUIS ERTESCHIK
     Attorneys for Plaintiff

---

[78] *See* 20 U.S.C §1400(c)(6) ("[It is] in the national interest that the Federal Government [assist] to educate children with disabilities[.]").