PAUL ALSTON                1126      LOUIS ERTESCHIK              5241
KRISTIN L. HOLLAND         10063     HAWAI`I DISABILITY RIGHTS CENTER
MAILE OSIKA                9826      1132 Bishop Street, Suite 2102
GEORGE TRAN                10911     Honolulu, HI  96813
                                     Telephone: (808) 949-2922
DENTONS US LLP                       Facsimile: (808) 949-2928
1001 Bishop Street, Suite 1800       E-mail: louis@hawaiidisabilityrights.org
Honolulu, HI  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591            Attorneys for Plaintiff
E-mail:  paul.alston@dentons.com     HAWAI`I DISABILITY RIGHTS CENTER
         kristin.holland@dentons.com
         maile.osika@dentons.com
         george.tran@dentons.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| HAWAI`I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its constituents,<br><br>          Plaintiff,<br><br>     vs.<br><br>CHRISTINA KISHIMOTO, in her official capacity as Superintendent of the State of Hawai`i, Department of Education; and PANKAJ BHANOT, in his official capacity as Director of the State of Hawai`i, Department of Human Services,<br><br>          Defendants. | Case No. CV18-00465 LEK-RLP<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF *PLAINTIFF'S MOTION PRELIMINARY INJUNCTION* [DKT NO. 8]**; SUPPLEMENTAL DECLARATION OF MAILE OSIKA; EXHIBITS "1" - "4"; SUPPLEMENTAL DECLARATION OF AMANDA KELLY, PHD, BCBA-D, LBA; EXHIBIT "1"; SUPPLEMENTAL DECLARATION OF ALISON VILLIARIMO; EXHIBITS "1" - "2"; CERTIFICATE OF WORD COUNT; CERTIFICATE OF SERVICE<br><br>**Hearing:**<br>Date: January 8, 2019<br>Time: 9:45 a.m.<br>Judge: Honorable Leslie E. Kobayashi |

# TABLE OF CONTENTS

I.    HDRC IS LIKELY TO SUCCEED ON THE MERITS .................................3

    A.    DOE's Discriminatory Policies Violate ADA and Section 504 ...........3

    B.    DHS's Improper Delegation and Failure to Coordinate Services
        Violates EPSDT, ADA, and Section 504 ...............................................4

    C.    DOE's Policies Regarding ABA Services Violate IDEA ....................8

        1.    Refusal to Fund or Provide ABA as a Related Service ............8

        2.    Illegal Predetermination in the IEP Process ...........................10

II.   THERE IS NO APPLICABLE EXHAUSTION REQUIREMENT ............13

III.  THE *STATUS QUO* VIOLATES FEDERAL LAW AND
     MANDATORY INJUNCTIVE RELIEF IS NECESSARY TO
     PREVENT ONGOING IRREPARABLE HARM ......................................15

IV.   ISSUES REGARDING PRIVATE INFORMATION OF THE
     WITNESS MINORS ................................................................................16

V.    HDRC DOES NOT SEEK RETROSPECTIVE RELIEF ............................18

VI.   CONCLUSION..........................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69*,
  815 F.3d 1195 (9th Cir. 2016) ...............................................................3

*Albogniga v. Sch. Bd. Of Broward Cty.*,
  87 F. Supp. 3d 1319 (S.D. Fla. 2015) ...................................................3

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County
  v. Rowley*,
  458 U.S. 176, 1102 S.Ct. 3034 (1982).............................................9, 10

*Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*,
  526 U.S. 66, 119 S.Ct. 992 (1999).........................................................8

*Chisholm v. Hood*,
  110 F.Supp.2d 499 (E.D. La. 2000) ......................................................5

*K.W. ex rel. D.W. v. Armstrong*,
  789 F.3d 962 (9th Cir. 2015) ...............................................................18

*Disability Law Center of Alaska, Inc. v. Anchorage School Dist.*,
  581 F.3d 939 (2009).............................................................................17

*Doe By & Through Brockhuis v. Arizona Dept. of Educ.*,
  111 F.3d 678 (9th Cir. 1997) ...............................................................14

*Fry v. Napoleon Cmty. Sch.*,
  137 S. Ct. 734 (2017)...........................................................................10

*Green v. Mansour*,
  474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) ..........................18

*J.E. v. Wong*,
  2016 WL 4275590 .......................................................................6, 7, 15

*John B. v. Menke*,
  176 F.Supp.2d 786 (M.D.Tenn.2001)....................................................5

ii

*Joshua A. ex rel. Jorge A. v. Roclin Unified Sch. Dist.*,
   319 F. App'x 692 (9th Cir.2009) ........................................................13

*Endrew F. ex rel. Joseph F. v. Douglas County Sch. Dist. RE-1*,
   137 S.Ct. 98 (2017) ...........................................................................10

*K. M. v. Tustin Unified Sch. Dist.*,
   725 F.3d 1088 (9th Cir. 2013) ..............................................................3

*K.G. v. Dudek*,
   981 F.Supp.2d 1275 (S.D. Fla. 2013) ..............................................9, 16

*Katie A., ex rel Ludin v. Los Angeles Cty.*,
   481 F.3d 1150 (9th Cir. 2007) .......................................................5, 6, 16

*New Jersey Prot. & Advocacy, Inc. v. New Jersey Dept. of Educ.*,
   563 F.Supp.2d 474 (D.N.J. 2008) ..................................................14, 15

*Tennessee v. Lane*,
   541 U.S. 509 (2004).............................................................................4

*Wiles v. Dep't of Educ.*,
   555 F. Supp. 2d 1143 (D. Haw. 2008) ................................................14

**Statutes**

20 U.S.C. §1440 ......................................................................................2

20 U.S.C. §1412 ......................................................................................2

42 U.S.C. §1396b ....................................................................................2

Federal Educational Rights and Privacy Act (FERPA) ...........................17

**Rules**

Local Rule 83.12 ....................................................................................17

**PLAINTIFF'S REPLY IN SUPPORT OF *PLAINTIFF'S MOTION PRELIMINARY INJUNCTION* [DKT NO. 8]**

Defendants' Opposition (Dkt. No. 16, "Opp.") falsely asserts that "DHS does not, and never has, delegated any of its responsibilities under the Medicaid program to DOE or any other State Department." Opp. at 4 (citing Med-QUEST Administrator, Judy Mohr Peterson's Declaration ("Peterson Decl."), ¶4). However, DHS's May 31, 2017 memorandum not only clearly delegates school-day ABA service decisions to DOE in the body of memo itself (as cited in the Motion at pp.4-5), it further details the delegation in section 6(f)(ii) of Attachment A to that memo as follows:

Attachment A

f.  Coordination with Other State Programs

    i.  Early Intervention Program (EIP) is responsible to determine and provide for services provided to its EIP beneficiaries aged 0 to three. In addition, EIP and QI health plans will transition a beneficiary from EIP to QI health plan to cover ABA services through collaboration with an EI Care Coordinator and QI health plan service coordinator.

    ii.  Department of Education (DOE) will determine services to be provided to a beneficiary while the beneficiary is in school. Services provided by the DOE are for purposes of educational access and benefit only and will be determined in accordance with the IDEA. The QI health plan will collaborate with DOE, as applicable, to provide and reimburse for ABA services outside of school.

    iii.  QI health plans will provide medically necessary ABA services for beneficiaries in the 1915(c) Developmental and Intellectual Disabilities (DD/ID) waiver.

Motion, Ex.3, [Dkt. No. 8-5, p. 8 of 29] (emphasis added). Although DHS directs QI health plans to "collaborate" with DOE, health plan collaboration is specifically limited "to provide for ABA services **outside of school**." *Id.* (emphasis added.) Further, DHS is well aware that DOE's position is that the IEP team's

1

determination of the "educationally relevant" needs of a student does not require deference to medical professionals.  Motion, Ex.4, p.3.  DHS also knows that DOE does not allow Medicaid providers onto campus to render ABA services.  *Id.*

DHS is also aware of the dismal/non-existent status of DOE's efforts to qualify for school-based claiming for providing qualified ABA services to Medicaid beneficiaries.  *See* Peterson Decl., ¶¶23-25.  DHS has reported that DOE sought zero (0) reimbursements for ABA services.  Motion, Ex.9 at C2.

DOE's policy effectively reduces EPSDT benefits to whatever an IEP team determines is "educationally relevant."  DHS's blind delegation to DOE, knowing that DOE is a Medicaid provider which is blocking the delivery of EPSDT services, is illegal.  *See* 42 U.S.C. §1396b (prohibiting reduction of EPSDT services even when such services are included in an IEP process). Defendants' bureaucratic blockade makes it virtually impossible for beneficiaries to receive medically necessary ABA services during the school day.

Defendants must coordinate to prevent the reduction of services under both IDEA and the Medicaid Act.  *See* 20 U.S.C. §§1440(c) and 1412(e).  Their failure to do so is not only a direct violation of those laws, but also constitutes discrimination against students with Autism in violation of ADA and Section 504.

## I.      HDRC IS LIKELY TO SUCCEED ON THE MERITS

### A.      DOE's Discriminatory Policies Violate ADA and Section 504

DOE does not dispute that it both bans private ABA providers from campus and does not provide full medically necessary ABA to its students who need it.  This is a prima facie violation of ADA and Section 504 because students with Autism are being denied reasonable accommodations of medically necessary ABA services they need to "enjoy meaningful access to the benefits of [a public education.]".  *See A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016).  Students with Autism who are recommended medically necessary ABA by qualified professionals cannot access the benefits of their education and receive the medical services they need.

It is not a reasonable accommodation to only provide "educationally necessary ABA services" because that determination is made by DOE's IEP team (usually personnel not qualified to assess students with Autism for ABA) and has no bearing on the need for medically necessary services.  *See* Opp. at 28; *See Albogniga v. Sch. Bd. Of Broward Cty.*, 87 F. Supp. 3d 1319, 1341 (S.D. Fla. 2015) (school cannot reject a requested accommodation in favor of one it prefers).  DOE has not shown that accommodating full medically necessary ABA on campus would result in undue burden to DOE or fundamental alteration of its programming.  *See K. M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1097-98 (9th

3

Cir. 2013).  Students with Autism are effectively excluded from school based on

their disability and the services they need.  *Tennessee v. Lane*, 541 U.S. 509, 531

(2004) (failure to accommodate has same effect as outright exclusion).[1]

B.    **DHS's Improper Delegation and Failure to Coordinate Services Violates EPSDT, ADA, and Section 504**

DHS is required to provide all medically necessary ABA services to

EPSDT recipients.  *See* Opp. at 5-6.  DHS insists that it does not delegate to DOE

and that the health plans are sufficiently tasked with "coordinating and ensuring

delivery of medically necessary ABA" for during the school day.  Opp. at 7-8

(quoting DHS May 17, 2017 Memo (Motion, Ex.3)); Opp. at 28-29 (denying it

---

[1] DOE's ongoing "efforts" to qualify for school-based claiming to offset the cost of providing ABA to students is of no consequence and does not relieve DOE of its federal obligations not to discriminate.  DOE is and has been for years a Medicaid provider.  13 years ago, the Legislature directed DOE to maximize federal revenue for off-setting the cost of providing health and education services to children with special needs.  *See* Supplemental Declaration of Maile Osika ("Supp. Osika Decl.), Ex.4 (Act 141 (2005)).  The issue of how to seek reimbursement for ABA services has been on DOE's radar since at least 2015.  *Id.*, Ex.2, pp. 4, 8; *See also* Motion, Ex.12 (HSTA Testimony) (reporting the same and concluding there is no reason for DOE to "continue denying or dragging their heels on accepting Medicaid funding for [ABA], including for privately rendered services offered during school hours.").  DOE already has a School-Based Medicaid Claiming Authorization process for medically necessary and educationally necessary, health related services.  Supp. Osika Decl., Ex.3.  And, even if a parent does not consent to participate in that program, DOE is "not relieved of its responsibility to ensure that all required services are provided to [a student], at no cost [to the parent]."  *Id.*

delegates to DOE, but confirming delegation to DOE to its health plans).  As explained above, this is patently false.

School day services are entirely left to the discretion of DOE. Motion, Ex.3, Attach.A, p.9.  DHS is aware that DOE "does not allow a parent's provider on campus during the school day to serve students, as this would interfere with the school's obligation to implement the student's educational program." Motion, Ex.4, p.2, ¶2.  DHS now concedes that it "can not [sic] assume that educationally-focused ABA services DOE may be providing meet the medically necessary criteria for EPSDT."  Opp. at 7.[2]

DHS is not absolved of its EPSDT obligations just because it delegates.  *Katie A., ex rel Ludin v. Los Angeles Cty.*, 481 F.3d 1150, 1159 (9th Cir. 2007); *John B. v. Menke,* 176 F.Supp.2d 786, 801 (M.D.Tenn.2001) (state cannot "disclaim responsibility for the ultimate provision of EPSDT-compliant services by a once-removed provider"); *Chisholm v. Hood*, 110 F.Supp.2d 499,

---

[2] This is a fair assumption based on DHS's HUIPA response as of April 4, 2018, reporting, among other things, that there were no school-based claims for Autism services and no responsive documents on the number of Medicaid recipients who receive ABA (or even ABA-like) services in school.  *See* Motion, Ex.9 (§§C1, C4, E4).  The minimum qualifications necessary to provide ABA services in school are the same as those required by Medicaid.  *Id.* at §C5.  DHS is involved in the working group focused on how DOE can obtain Medicaid reimbursement, which is still reported to be a "work in progress." Opp., Peterson Decl. *Id.* ¶¶23-25.

507 (E.D. La. 2000) (EPSDT violation where state Medicaid agency limited certain medically necessary services "exclusively to those allowed by school boards," because "[it] cannot … pawn off its obligation to the class as a whole by delegating it to a State agency not under the same federal mandate.").

DHS must ensure that the EPSDT services are reasonably effective and sufficient to "achieve their purpose." *Katie A.*, 481 F.3d at 1159. (quoting State Medicaid Manual § 5110).  This includes ensuring that its constituents are not discriminated against simply because of their disability and type of treatment services they need.  Because DOE blocks ABA providers from campus and does not itself provide the medically necessary services, students who need ABA need to leave school to get services.  This policy fails to meet the requirement that ABA be implemented across settings.  Motion, Ex.3, Attachment A at p.5; *Id.*, Ex.9, ¶E3 ("Beneficiaries may receive ABA services in settings that maximize treatment outcomes, to include but not limited to a clinic, in their home, or another community setting.").

Defendants argue that the Egan Case (*J.E. v. Wong*) "has no application in this case."  Opp. at 30-31.  While that case did not involve the DOE or its policy to exclude ABA providers from campus with the full knowledge and acquiescence of DHS, it confirms that ABA must be provided under EPSDT. Motion, Ex.1, *J.E. v. Wong*, No. 14-00399 HG-KJM, 2016 WL 4275590, at *10

(D. Haw. Aug. 12, 2016).  The Court further held that the Medicaid Act requires

sufficient notice to EPSDT recipients regarding services, which requires DHS to

take a "proactive approach" and "seek out individuals and inform them of the

benefits of prevention and the health services and assistance available."  *Id.* at *14

(citing 42 U.S.C. § 1396a(a)(43)(A)).  Compliance "is measured in terms of the

state's efforts."  *Id.*  Such communications should apprise eligible persons of the

nature of the EPSDT program, services available under the program, and **where**

**and how they may obtain EPSDT services**. *Id.* at *15 (citing 42 C.F.R. §

441.56(a)(2)(ii)).  This means up-to-date information and DHS has an **affirmative**

**duty to correct out-of-date or incorrect information**. *Id.*

   Since the Egan Case, the only "notice" that DHS has supplied

regarding ABA services under Medicaid provides **no information about how to**

**access ABA during school** in light of DHS's policy that DOE will handle ABA

services during the school day.  Motion, Ex.2.  The notice implies that all

medically necessary services will be provided and frustrates Judge Gillmor's ruling

because there is, again, "widespread confusion" regarding coverage of and access

to ABA services under EPSDT.  2016 WL 4275590, at *15.  The state may not

"shirk its responsibilities to Medicaid recipients by burying information about

available services in a complex bureaucratic scheme."  *Id.* at *17 (quoting

*Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 293 F.3d 472, 481

(8th Cir. 2002)).

### C.   DOE's Policies Regarding ABA Services Violate IDEA

#### 1.   Refusal to Fund or Provide ABA as a Related Service

DOE's refusal to accommodate medically necessary ABA during

school hours forces students with Autism out of public schools.  This violates not

only ADA and Section 504, but IDEA as well.  "As a general matter, services that

enable a disabled child to remain in school during the day provide the student with

the meaningful access to education that Congress envisioned."  *Cedar Rapids*

*Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 73, 119 S.Ct. 992,

997 (1999) (internal quotation omitted).  "Congress intended to open the door of

public education to all qualified children and required participating States to

educate handicapped children with nonhandicapped children whenever possible."

*Id.* at 78, 119 S.Ct. at 999 (internal quotations omitted).

DOE must fund or supply ABA as a "related service" to "help

guarantee" that students with Autism are integrated into the public schools.  *Cedar*

*Rapids*, 526 U.S. at 79, 119 S.Ct. at 1000 (school was required to provide related

and supportive services ventilator services in the school setting).  DOE cannot

dismiss ABA as an effective medical or educational method simply because it has

8

other preferred programs for students with Autism.[3]  When a student with Autism

needs 30-40 hours of medically necessary ABA per week, as a practical matter,

those services must be provided in school for that student to remain in school.

DOE contends that it has complete discretion within the IEP process

to determine whether a student is "eligible for special education and related

services."  Opp. at 12.  DOE disregards professional and qualified

recommendations for medically necessary ABA services (which meet the stringent

Medicaid standards) based on assessments by its own IEP team (which does not

purport to include any qualified LBAs), even though Defendants admit that "[t]he

ABA field does not distinguish between medical and educational services." (Opp.

at 13).  This is nonsensical.  If ABA services are medically necessary for a student

across settings, a professional has already determined that such services are needed

in school.  DOE must include those as a "related service" to ensure the student has

"meaningful access to education."[4]

_____

[3] Defendants do not mention or attempt to distinguish the *R.E.B* (9th Cir.2017),
*K.G.* (S.D. Fla. 2013), or *Deal* (6th Cir. 2004), which are cases cited by HDRC that
affirm and discuss ABA as an effective educational and medical treatment for
Autism.  Motion at 23-24 (Note: HDRC inadvertently omitted the full citation to
*K.G.* in the Motion, which is *K.G. v. Dudek*, 981 F.Supp.2d 1275 (S.D. Fla. 2013)).

[4] Defendants rely heavily on *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist.,
Westchester County v. Rowley*, 458 U.S. 176, 1102 S.Ct. 3034 (1982), which
stands for the proposition that IDEA does not require "strict equality of

(continued...)

9

## 2.   Illegal Predetermination in the IEP Process

The IEP serves as the "primary vehicle" for providing students with a

FAPE.  Opp. at 9 (citing *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 734, 748 (2017)).

Here, for both medically necessary and educationally relevant ABA services, that

IEP process is fatally flawed.

Although required to review and consider parent recommendations for

ABA, the IEP team enjoys complete autonomy to determine educational relevance

for requested services.  Opp. at 12.[5]   What Defendants do not mention is that ABA

---

(...continued)

opportunity or services" to "maximize" education.  Opp. 21-23.  That case
involved a deaf student who was already making excellent progress with the
specialized services offered in her IEP.  The standard expressed by the Supreme
Court recently in *Endrew F. ex rel. Joseph F. v. Douglas County Sch. Dist. RE-1*,
137 S.Ct. 98 (2017) distinguishes *Rowley* and is more akin to this case because it
involved a student with Autism.  The Court held: "To meet its substantive
obligation under the IDEA, a school must offer an IEP **reasonably calculated to
enable a child to make progress appropriate in light of the child's
circumstances**."  *Endrew F.*, 137 S.Ct. at 999.  "[A] student offered an educational
program providing "merely more than *de minimis*" progress from year to year can
hardly be said to have been offered an education at all." *Id*. at 1001.

[5] Most of the factual allegations regarding DOE in the Opposition are supported by
the Kalama Declaration.  Opp., Ex.A (Kalama CV).  Although Ms. Kalama
purports to be an "employee" of DOE, her CV shows her most recent DOE
position ended in March 2014 and that she is presently a grant project manager and
adjunct faculty with Eastern New Mexico University.  *See* Opp., Ex.A and Kalama
Decl., ¶1.  It is unclear how Ms. Kalama has personal knowledge regarding any of
the current statistics for and practices of DOE or what qualifies her to testify on its
behalf.  Ms. Kalama also does not purport to have any specialized knowledge of or

(continued...)

is disfavored in DOE.  Over and over again, Parents and professionals who

advocate for such services are summarily rejected.[6]

HDRC submitted seven witness declarations of parents of children

with Autism and two declarations from other Autism advocates describing their

predetermination experiences in requesting ABA services from DOE.[7]  Since this

case was filed, HDRC's counsel has been contacted by additional parents and

special education counsel who have shared similar experiences and want to submit

---

(...continued)

experience with behavior analysis, yet makes generalized statements regarding
what the ABA field consists of.  *See* Kalama Decl., ¶¶6-7.  Most critically, it is
unclear what Ms. Kalama reviewed to reach her "understanding" of the services for
individual constituent student witnesses in this case.  *Id.*, ¶¶ 14-20.  Defendants
entirely rely on her conclusory remarks to argue that the constituents are "receiving
all IEP services" and "all educationally relevant ABA services necessary for the
students to enjoy meaningful access to the benefits of a public education."  Opp. at
15-17, 28.  Such evidence is unreliable and should be given little, if any, weight.

[6] *See* Supplemental Declaration of Amanda Kelly, Ex. 1 (Letter from Jason Gilkas,
DOE District Educational Specialist).  This letter confirms, among other things:
DOE's position that there is no requirement for functional behavior assessments
(FBAs) to be performed by LBAs and that DOE has its "own staff to conduct such
assessments"; DOE teachers, related service providers, and SBBH counselors use
ABA on DOE campuses every day; Parents have a fundamental misunderstanding
of what ABA is and have been "brought to believe that it is some kind of new
method of helping students with autism"; and the dispute over ABA services is
fueled by private agencies hoping to get parents on board so they can make money.

[7] *See* Kelly Decl. ¶¶ 52-56; Erteshick Decl. ¶¶ 23-25; Tachera Decl. 21-23, 28-30,
32-33, 39-43, 46, 64-67, 70, 76; White Decl. ¶¶12-16; Rogers Decl. ¶¶13-27, 30-
39, 47-49; McComas Decl. 5-9, 10-12, 20-28; Villiarimo Decl. 11-22, 24-28;
Cosio Decl. 11-20, 21-26; Cunningham Decl. 7-10.

additional testimony.  Supp. Osika Decl. ¶5.  HDRC also submitted declarations of Amanda Kelly, describing the IEP processes in which she participated as a parent consultant for Autism services.  Defendants argue that all the exemplar constituents offered by HDRC through declarations of their parents already receive "comprehensive educational services."  Opp. at 2.[8]  Not only is Defendants' position directly contradicted by the parent and advocate declarations, Defendants did not serve unredacted declarations on Plaintiff's counsel until hours before this Reply was due and did not provide any supporting documentation to Plaintiff's counsel, despite earlier requests to do so.  Supp. Osika Decl. ¶6.  The information about minors in the Kalama and Peterson declarations should be disregarded as untimely and untested.

DOE denies it has a policy only to offer SBBH services instead of ABA.[9]  Even assuming for argument purposes that DOE goes through the proper

---

[8] Attached is a Supplemental Declaration of Alison Villiarimo, on behalf of constituent J.V., disputing Defendants' characterization of her child's experience, including exhibits as examples of her efforts to get DOE to recognize J.V.'s Autism and then to get one-to-one support services for J.V. Villiarimo Decl., Exs. 1-2.

[9] Defendants argue that HDRC "ignorantly relies" on DOE's memo describing the SBBH program for its "students who do not require ABA services." Opp. at 24. HDRC's argument is that DOE has predetermined that its students do not require ABA unless other educational support services fail, which effectively means students receive SBBH services first.  This results in irreparable harm to these

(continued...)

motions of the IEP process, makes proper and qualified recommendations for a student with Autism, and then actually provides whatever is in the IEP, all in accordance with the specific requirements of IDEA, DOE still must accommodate medically necessary ABA services to students with Autism, as discussed above.[10]

## II.    THERE IS NO APPLICABLE EXHAUSTION REQUIREMENT

HDRC is entitled to bring these IDEA (and related ADA and Section 504 claims) against Defendants without exhausting administrative remedies.  *See* Opp. at 19-21 (arguing that because this lawsuit asserts denials of FAPE, the administrative process must be exhausted).  DOE's illegal policies and practices are of general applicability and have caused a systemic non-compliance with

---

(...continued)

students by delaying access to critical ABA services during students' developmental window under the guise that DOE is offering "Autism services."

[10] Defendants discuss at length *Joshua A. ex rel. Jorge A. v. Roclin Unified Sch. Dist.*, 319 F. App'x 692, 694 (9th Cir.2009), an unpublished Ninth Circuit decision upholding an administrative ruling that a school district's IEP approach was sufficient for a FAPE, even though requested ABA services were denied.  The *Joshua A.* case involved alleged individualized procedural violations, not a systemic violation as HDRC alleges here (see below at Fn.13).  Further, it is unclear from the short, 2-page order whether the student's need for medically necessary ABA would have required him to withdraw from school, given the IEP team's rejection of ABA services.

IDEA.[11]  Exhaustion is not required if it would be futile or offer inadequate relief or if the agency has adopted a policy or pursued a practice of general applicability that is contrary to the law.  *Doe By & Through Brockhuis*, 111 F.3d at 681.

HDRC brings this case on behalf of all its constituents with Autism who need ABA services in a medical or educational setting, or both.  HDRC's IDEA claim alleges that Defendants systemically fail to comply with the statute's mandates.  Administrative remedies cannot correct this systemic wrong and a FAPE can never be timely and adequately provided for an Autistic student who needs ABA unless and until DOE stops engaging in illegal predetermination.[12]  *See New Jersey Prot. & Advocacy, Inc. v. New Jersey Dept. of Educ.*, 563 F.Supp.2d 474, 486 (D.N.J. 2008) (protection and advocacy group excused from exhaustion requirement where it alleged systematic legal deficiencies and, correspondingly

---

[11] *See Doe By & Through Brockhuis v. Arizona Dept. of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997) ("a claim is "systemic" if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but that it is not "systemic" if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem.").

[12] Defendants cite only one case on this issue, *Wiles v. Dep't of Educ.*, 555 F. Supp. 2d 1143, 1163 (D. Haw. 2008), which is inapposite because it dealt with an individualized retaliation claim by the parents of a student.  Opp. at 20-21.

14

requested system-wide relief that could not be provided (or even addressed) through the administrative process).[13]

Likewise, as to the claims against DHS, there is no requirement to exhaust state administrative state remedies before bringing a federal lawsuit alleging violation of the Medicaid Act.  *See J.E. v. Wong*, 2016 WL 4275590, at *10 (citing *Okla. Chapter of Am. Acad. of Pediatrics (OKAAP) v. Fogarty*, 366 F.Supp.2d 1050, 1102 (N.D. Okla. 2005)).

## III.   THE *STATUS QUO* VIOLATES FEDERAL LAW AND MANDATORY INJUNCTIVE RELIEF IS NECESSARY TO PREVENT ONGOING IRREPARABLE HARM

Defendants' current policies are illegal.  The requested injunctive relief would "impose an **entirely new policy and practice** regarding DOE's education of its students with ASD."  Opp. at 2 (emphasis added).

A prohibitory injunction maintains the status quo whereas a mandatory injunction goes well beyond simply maintaining the status quo.[14]  *N.D.*

---

[13] As was the fact in *New Jersey Prot.*, the individual students described by HDRC in the Motion are not plaintiffs in this action, but illustrative examples of the harm being caused by Defendants' policies.  *New Jersey Prot.*, 563 F.Supp.2d at 486 (No exhaustion required where P&A sought relief that required restructuring, by judicial order, of the mechanism that the state had in place to meet the needs of students with special educational problems).

*ex rel v. Hawaii Dept. of Educ*., 600 F.3d 1104, 1112 (9th Cir. 2010) (quoting

*Stanley v. Univ. of S. California,* 13 F.3d 1313, 1320 (9th Cir.1994)).  Such

mandatory injunctive relief is appropriate where, as here, there is a strong

likelihood of success because the "facts and law clearly favor" the plaintiff.  *Katie*

*A.*, 481 F.3d at 1156 (strong likelihood that plaintiffs would succeed on the merits

meets the requirement for issuance of a mandatory preliminary injunction).

      Injunctive relief is needed to stop this irreparable harm.  *See K.G.*, 981

F.Supp.2d at 1288 ("there would be irreparable injury to Plaintiffs and all

Medicaid-eligible minors in Florida who have been diagnosed with autism or ASD

if these children do not receive ABA pursuant to this injunction… If these children

do not receive ABA in the primary years of development up to age 6 and then to 12

years of age, the children may be left with irreversible language and behavioral

impairments.").

## IV.   ISSUES REGARDING PRIVATE INFORMATION OF THE WITNESS MINORS

      Defendants moved for, and were granted, leave to submit unredacted

declarations under seal because they contain private information about the witness

---

(...continued)

[14] "The status quo means the last, uncontested status which preceded the pending controversy."  *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dept. of Educ.*, 600 F.3d 1104, 1112 (9th Cir. 2010) (quotation omitted).

declarants in support of the Motion.  Dkt. Nos. 17 and 19.  Despite the clear

requirements of Local Rule 83.12 and a request of HDRC's counsel, HDRC was

not served with unredacted copies of those declarations until within hours of the

deadline for this Reply and have not been served with any documents supporting

the hearsay statements of Declarants Peterson and Kalama regarding the minors'

health benefits or IEPs.  Supp. Osika Decl., ¶6.[15]  Thus HDRC was unable able to

sufficiently review the content of the allegations contained therein in preparing this

Reply.  *Id.*  Further, and despite seeing the obvious need to protect personal and

confidential information regarding the minors, Defendants publicly filed personal

details from the minors records unredacted in their Opposition and have not

corrected the error even after Plaintiff brought it to their attention.  Opp. at 15-17;

Supp. Osika Decl., ¶7, Ex.1.[16]

---

[15] As the designated Protection and Advocacy agency for Hawai`i, HDRC's access
to DOE's information is not barred by the Federal Educational Rights and Privacy
Act ("FERPA").  *See Disability Law Center of Alaska, Inc. v. Anchorage School
Dist.*, 581 F.3d 939, 940 (2009).

[16] In addition, prior to filing their Opposition Defendants disingenuously took the
position that they were prejudiced by not having the full names of the minor
individuals; Defendants concealed the fact that they had already accessed minors'
health and medical records during the briefing on the discovery issues.  Osika
Decl., ¶¶3-4.

## V.   HDRC DOES NOT SEEK RETROSPECTIVE RELIEF

HDRC does not seek retrospective relief, and the requested prospective relief is permitted by the Eleventh Amendment.  *See* Opp. at p.30.  "To ensure the enforcement of federal law [], the Eleventh Amendment permits suits for **prospective injunctive relief** against state officials acting in violation of federal law."  *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015); *See also Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985) ("[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.").

## VI.   CONCLUSION

For all the reasons set forth in the Motion and herein, HDRC respectfully submits that it should be granted the requested injunctive relief against Defendants.

DATED: Honolulu, Hawai`i, December 18, 2018.

_/s/ Maile Osika_____
PAUL ALSTON
KRISTIN L. HOLLAND
MAILE OSIKA
GEORGE TRAN
Attorneys for Plaintiff

18