UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| HAWAI`I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its constituents;<br><br>             Plaintiff,<br><br>   vs.<br><br>CHRISTINA KISHIMOTO, in her official capacity as superintendent of the state of Hawai`i, Department of Education; AND PANKAJ BHANOT, in his official capacity as Director of the State of Hawaii, Department of Human Services;<br><br>             Defendants. | CIV. NO. 18-00465 LEK-RLP |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On July 29, 2020, Defendants Christina Kishimoto ("Kishimoto"), in her official capacity as Superintendent of the State of Hawai`i, Department of Education ("DOE"), and Pankaj Bhanot ("Bhanot"), in his official capacity as Director of the State of Hawai`i, Department of Human Services, (collectively "Defendants") filed their Motion for Summary Judgment ("Motion"). [Dkt. no. 88.] Plaintiff Hawai`i Disability Rights Center ("Plaintiff") filed its memorandum in opposition on October 2, 2020, and Defendants filed their reply on October 9, 2020. [Dkt. nos. 111, 114.] This matter came on for hearing on

October 23, 2020.  On November 30, 2020, an entering order was issued informing the parties of this Court's ruling on the Motion ("11/30/20 EO Ruling").  [Dkt. no. 123.]

On November 19, 2021, the Ninth Circuit Court of Appeals issued its en banc decision in D.D. ex rel. Ingram v. Los Angeles Unified School District, 18 F.4th 1043 (9th Cir. 2021).  On January 21, 2022, this Court issued an entering order directing the parties to file additional briefing addressing the application of the reasoning in D.D. ex rel. Ingram to the instant case.  [Dkt. no. 143.]  Defendants filed its memorandum on February 1, 2022, Plaintiff filed its response on February 14, 2022, and Defendants filed their reply on February 28, 2022.  [Dkt. nos. 144, 145, 146.]

The Motion is now fully briefed.  The instant Order supersedes the 11/30/20 EO Ruling.  Defendants' Motion is hereby granted for the reasons set forth below.

## BACKGROUND

### I.   Plaintiff's Allegations

Plaintiff filed this action against Defendants on November 28, 2018.  [Complaint, filed 11/28/18 (dkt. no. 1).]  Plaintiff's Complaint alleges Defendants failed (and continue to fail) to provide Applied Behavior Analysis ("ABA") services to children and young adults diagnosed with Autism Spectrum Disorder ("ASD" or "Autism").  See id. at ¶¶ 1-4.  Specifically,

the Complaint alleges "DHS is required by federal law to provide medically necessary ABA services to Medicaid-eligible individuals from birth through age 21, under the early and periodic screening, diagnostic, and treatment mandate ('EPSDT') of the Medicaid Act."  [Id. at ¶ 25 (emphasis omitted).]  "DHS's stated policy is that DOE, rather than DHS, will provide ABA services to Medicaid-eligible students with Autism during school hours."  [Id. at ¶ 26.]

Plaintiff alleges "DHS fails to ensure that medically necessary ABA is provided during the school day and effectively limits EPSDT recipients with Autism to the services provided by DOE in public schools."  [Id. at ¶ 27.]  Plaintiff also alleges "DHS does not ensure the required ABA services are actually provided to EPSDT recipient students . . . in DOE public schools."  [Id. at ¶ 31.]  It further contends that, although "DOE is required to provide Hawai`i students with disabilities with a free and appropriate [public] education ('FAPE'), pursuant to [the Individuals with Disabilities Education Act ('IDEA'),]" [id. at ¶ 32,] "DOE does not provide adequate ABA services in schools and its limited special education and related services are insufficient to meet the needs of a student with Autism," [id. at ¶ 41].

Plaintiff alleges that, to provide students with disabilities with a FAPE, DOE is required to prepare an

3

Individualized Educational Program ("IEP") for those students. It further alleges DOE generally does not include ABA services as part of the IEPs for students with Autism, even if a licensed professional determines that ABA services are medically necessary.  [Id. at ¶¶ 46–47.]  According to the Complaint, "[a]s a result of DOE's policies and practice, parents of children with Autism are forced to forgo their child's rights to FAPE . . . by withdrawing their child from public school to receive the ABA services they need . . . ."  [Id. at ¶ 60.] Plaintiff asserts the following claims: (1) a 42 U.S.C. § 1983 claim against DOE and DHS for violations of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* ("Count I"); (2) a § 1983 claim against DOE and DHS for violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Count II"); (3) a § 1983 claim against DHS for violations of the Medicaid Act, 42 U.S.C. § 1396, *et seq.* ("Count III"); and (4) a § 1983 claim against DOE for violations of the IDEA ("Count IV").

## II.  **Facts of the Case**

Plaintiff "is a federally authorized protection and advocacy system organization."  [Defendants' Concise Statement of Facts ("Defs.' CSOF"), filed 7/29/20 (dkt. no. 89), at ¶ 1; Plaintiff's Concise Statement of Facts in Opp. to Defendants' Motion for Summary Judgment ("Pltf.'s CSOF"), filed 10/2/20

4

(dkt. no. 112), at ¶ 1 (stating Defs.' ¶ 1 is not disputed).]
Some of Plaintiff's constituents include "Hawaii children and
young adults diagnosed with [ASD] who require some level of
[ABA] services." [Defs.' CSOF at ¶ 2; Pltf.'s CSOF at ¶ 2
(partially disputing Defs.' ¶ 2 on other grounds).] Plaintiff
brings this action "in its representative capacity." [Defs.'
CSOF at ¶ 4; Pltf.'s CSOF at ¶ 4.]

        In July 2012, DOE issued an internal memorandum
"stat[ing] that services provided by anyone other than a DOE
employee or DOE contracted provider would interfere with the
DOE's obligation to implement the student's IEP and to provide
special education and related services under the IDEA." [Defs.'
CSOF at ¶ 29; Pltf.'s CSOF at ¶ 29.] "ABA services must be
included in a student's IEP if those services have been
determined to be educationally necessary by the student's IEP
team." [Defs.' CSOF at ¶ 27; Pltf.'s CSOF at ¶ 27.]

        In July and September 2014 respectively, the Centers
for Medicaid and Medical Services issued an informational
bulletin and a Medicaid and Children's Health Insurance Program
frequently asked questions document. [Defs.' CSOF ¶¶ 18-19;
Pltf.'s CSOF ¶¶ 18-19.] Those documents "clarified that
Medicaid agencies must cover medically necessary EPSDT services,
including ABA services if determined to be 'medically necessary'

for an individual EPSDT member diagnosed with ASD." [Defs.'
CSOF ¶ 20; Pltf.'s CSOF ¶ 20.]

In January and August 2015, DHS – through its Med-
QUEST Division ("MQD") – issued memoranda to "inform [QUEST
Integration ('QI')] health plans and providers that they are
required to comply with the full range of EPSDT duties and
requirements, including the duty to provide ABA services for
children under 21 years of age with ASD when based on an
individualized determination of medical necessity." [Defs.'
CSOF at ¶¶ 21-22; Pltf.'s CSOF at ¶¶ 21-22.] In May 2017, MQD
issued a memorandum ("the May 2017 Memo") stating that "EPSDT
coverage includes ABA services for children with ASD." [Defs.'
CSOF at ¶ 25; Pltf.'s CSOF at ¶ 25.] The May 2017 Memo stated,
in relevant part:

> This guidance does not apply to the Department of
> Education (DOE) school-based claiming or the
> Department of Health's Early Intervention Program
> (DOH-EIP}. DOE may provide ABA or ABA-like
> services to a beneficiary while in school as it
> relates to a child's educational needs. If
> justification is provided indicating the ABA
> service is medically necessary and approved by
> the QI health plan, the health plan will be
> responsible to provide and cover ABA services
> before or after school and when school is not in
> session. . . . MQD will reimburse these state
> agencies for ABA services provided to Medicaid
> beneficiaries.
>
> The ultimate responsibility to ensure that
> medically necessary ABA services are delivered to
> beneficiaries rests with the QI health plans.
> This responsibility is in effect all year,

> whether school is in session or out of session.
> QI health plans are expected to coordinate with
> the family, DOE and/or EIP to ensure that the
> beneficiary receives medically necessary ABA
> services in the most efficient manner that also
> takes into account the child's tolerance to
> benefit from receiving services in and outside of
> school.

[Defs.' CSOF, Declaration of Judy Mohr Peterson ("Peterson Decl."), Exh. F ("May 2017 Memo"), at PageID #: 1147.[1]]  "The May 2017 Memo reflects DHS['s] current policy with respect to the provision of ABA services for children under 21 years of age who are enrolled in the Med-QUEST program."  [Defs.' CSOF at ¶ 26; Pltf.'s CSOF at ¶ 26.]  Although the May 2017 Memo stated MQD would reimburse state agencies for ABA services provided to Medicaid beneficiaries, in February 2019, Peterson testified that DOE was not currently "billing for ABA services."  [Pltf.'s CSOF, Declaration of Maile Osika ("Osika Decl."), Exh. 12 (trans. of 2/22/19 depo. of Peterson), at 13.]

In February 2018, Kishimoto issued a memorandum regarding ABA services.  [Defs.' CSOF at ¶ 30; Pltf.'s CSOF at ¶ 30.]  According to that memorandum, "[t]he IEP team determines if ABA services are necessary and appropriate in accordance with the requirements of the [IDEA] and Hawaii Administrative Rules Chapter 8-60."  [Def.'s CSOF, Declaration of Anne Marie Kalama

---

[1] Judy Mohr Peterson ("Peterson") is the Administrator of MQD.  [Peterson Decl. at ¶ 1.]

("Kalama Decl."), Exh. H (Applied Behavior Analysis memorandum to DOE Employees from Kishimoto, dated 2/13/18), at PageID #: 1177.[2]]

As of December 2019, DOE reported that the official count of students with ASD was 2,088.  [Osika Decl., Exh. 10 (DOE Report on Act 205 (2018) Report on Autism Spectrum Disorder and Applied Behavior Analysis, dated July 2020, with transmittal letter) ("July 2020 DOE Report"), at 2.]  As of March 30, 2020, "402 students receive[d] ABA services as determined by their IEP team" and 317 of those students were "eligible as ASD."  [Id.]

In the instant Motion, Defendants seek summary judgment, in part, on the grounds that "all counts of the Complaint filed in this action . . . can be redressed by the administrative procedures under [IDEA,]" which required the parents of Plaintiff's constituents "to exhaust administrative remedies before filing a civil lawsuit."  [Mem. in Supp. of Motion at 1.]

## DISCUSSION

I.   **Preliminary Issues**

A.   **Additional Discovery**

Plaintiff seeks additional discovery and a continuance, pursuant to Fed. R. Civ. P. 56(d).  [Mem. in Opp.

---

[2] Anne Marie Kalama is the Director of DOE's Exceptional Support Branch.  [Kalama Decl. at ¶ 1.]

at 26.]  Defendants object to Plaintiff's request.  "If a
nonmovant shows by affidavit or declaration that, for specified
reasons, it cannot present facts essential to justify its
opposition [to a motion for summary judgment], the court may
. . . allow time to obtain affidavits or declarations or to take
discovery[.]"  Fed. R. Civ. P. 56(d)(2).  "Moreover, '[t]he
burden is on the party seeking additional discovery to proffer
sufficient facts to show that the evidence sought exists.'"
Fleck v. CitiMortgage, Inc., CIVIL NO. 13-00683 DKW KSC, 2014 WL
12591350, at *3 (D. Hawai`i Sept. 26, 2014) (alteration in
Fleck) (quoting Nidds v. Schindler Elevator Corp., 113 F.3d 912,
921 (9th Cir. 1996)).  "Whether to deny a Rule 56(d) request for
further discovery by a party opposing summary judgment is within
the discretion of the district court."  Id. (citation omitted).

        Plaintiff states additional discovery is appropriate
because it "has not completed discovery and intends to take
Defendants' depositions . . . ."  [Mem. in Opp. at 26.]
Plaintiff's request is denied, however, because it "do[es] not
identify particular facts that their requested discovery would
reveal, and do[es] not indicate how any discovery they intend to
take would defeat [Defendants'] summary judgment arguments."
See Fleck, 2014 WL 12591350, at *3.  Moreover, the Motion was
filed over two years ago, and additional discovery would not
likely change the outcome of the issues discussed in this Order.

## B.   **Evidentiary Objections**

In addition to filing its memorandum in opposition, Plaintiff filed a separate document titled "Plaintiff's Evidentiary Objections to Defendants' Declarations of Judy Mohr Peterson and Annie Marie Kalama" ("Evidentiary Objections"). [Filed 10/2/20 (dkt. no. 113).]  Plaintiff's Evidentiary Objections contest the admissibility of some of Defendants' evidence in support of their Motion.  Defendants argue the Court should not consider the objections because the filing violates Local Rule 56.1.  [Reply at 14-15.]  Defendants also contend the Evidentiary Objections "operate[] to extend the Opposition brief beyond the page limit in [Local Rule ]7.4 without leave of court.  [Id. (citing LR7.4(a)).]  Upon reviewing Plaintiff's Evidentiary Objections, most of the objections are not relevant here because the Court does not rely upon the challenged evidence.  However, three of the objections are relevant and the Court addresses each one in turn.

Plaintiff challenges paragraph six in the Peterson Declaration on the ground that it is inadmissible hearsay.  See Evidentiary Objections at PageID #: 1659.  Plaintiff's objection is overruled because Plaintiff admitted to the evidence in its responsive CSOF and, therefore, the Court did not rely on paragraph six of the Peterson Declaration.  See Defs.' CSOF at ¶ 20; Pltf.'s CSOF at ¶ 20.  Plaintiff also argues the May 2017

10

Memo is inadmissible because it "asserts legal conclusions
regarding section 1905(r) of the Social Security Act."
[Evidentiary Objections at PageID #: 1663 (citations omitted).]
Plaintiff cites to G. v. Hawai`i, Department of Human Services,
703 F. Supp. 2d 1112, 1128 (D. Hawai`i 2010), in contending that
the May 2017 Memo asserts legal conclusions.  See Evidentiary
Objections at PageID #: 1663.  But, that case is inapposite.
There, the district court concluded that a doctor's preliminary
and final report contained an inadmissible legal opinion that
the applicable statute and implementing regulations were
violated.  See G., 703 F. Supp. 2d at 1128.  Here, Plaintiff's
objection is overruled because the May 2017 Memo is not an
expert opinion.

          Finally, Plaintiff challenges the February 2018
memorandum that Kishimoto issued.  See Evidentiary Objections at
PageID #: 1663.  Plaintiff states the memorandum "asserts legal
conclusions regarding the obligations of the State of Hawai`i
Department of Education . . . ."  [Id.]  Plaintiff, however,
does not cite to any legal authority to support its objection.
The memorandum is not an expert opinion.  Rather, it is an
internal memorandum from Kishimoto to DOE employees.  See Exh. H
at PageID #: 1177.  Plaintiff's objections are therefore
overruled.

II.  **Relevant Statutory Framework**

The United States Supreme Court has stated:

The IDEA offers federal funds to States in
exchange for a commitment: to furnish a "free
appropriate public education"—more concisely
known as a FAPE—to all children with certain
physical or intellectual disabilities.  [20
U.S.C. § 1412(a)(1)(A)]; see [20 U.S.C.]
§ 1401(3)(A)(i) (listing covered disabilities).
As defined in the Act, a FAPE comprises "special
education and related services" — both
"instruction" tailored to meet a child's "unique
needs" and sufficient "supportive services" to
permit the child to benefit from that
instruction.  §§ 1401(9), (26), (29); see Board
of Ed. of Hendrick Hudson Central School Dist.,
Westchester Cty. v. Rowley, 458 U.S. 176, 203,
102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982).  An
eligible child, as this Court has explained,
acquires a "substantive right" to such an
education once a State accepts the IDEA's
financial assistance.  Smith v. Robinson, 468
U.S. 992, 1010, 104 S. Ct. 3457, 82 L. Ed. 2d 746
(1984).

Under the IDEA, an "individualized education
program," called an IEP for short, serves as the
"primary vehicle" for providing each child with
the promised FAPE.  Honig v. Doe, 484 U.S. 305,
311, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988); see
[20 U.S.C.] § 1414(d).  (Welcome to—and apologies
for—the acronymic world of federal legislation.)
Crafted by a child's "IEP Team"—a group of school
officials, teachers, and parents—the IEP spells
out a personalized plan to meet all of the
child's "educational needs."
§§ 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B).  Most
notably, the IEP documents the child's current
"levels of academic achievement," specifies
"measurable annual goals" for how she can "make
progress in the general education curriculum,"
and lists the "special education and related
services" to be provided so that she can "advance
appropriately toward [those] goals."
§§ 1414(d)(1)(A)(i)(I), (II), (IV)(aa).

Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 748–49 (2017) (some alterations in Fry).

The IDEA, however, is not the only federal statute protecting the interests of students with disabilities.  For instance,

> [t]he ADA promises non-discriminatory access to "the services, programs, or activities" of any public facility, 42 U.S.C. § 12132, and requires "reasonable modifications" to the facility's "policies, practices, or procedures" to avoid discrimination, 28 C.F.R. § 35.130(b)(7)(i). Section 504 of the Rehabilitation Act imposes similar obligations on any federally funded "program or activity."  29 U.S.C. § 794(a). "[B]oth statutes authorize individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages."  Fry, 137 S. Ct. at 750.

> When disability issues arise in the school context, the substantive requirements of the IDEA may overlap with those of these other statutes. After the Supreme Court read the IDEA as providing the "exclusive avenue" for a child with a disability to challenge his special education program, Smith v. Robinson, 468 U.S. 992, 1009, 104 S. Ct. 3457, 82 L. Ed. 2d 746 (1984), Congress amended the IDEA to provide that:

> > Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], [the Rehabilitation Act], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be

required had the action been brought under
[the IDEA].

20 U.S.C. § 1415(l).  This provision makes plain
that the IDEA does not preempt other statutory
claims by children with disabilities, but
requires that a plaintiff first exhaust the
administrative process if "seeking relief that is
also available under" the IDEA.  Id.  It is, in
other words, "designed to channel requests for a
FAPE (and its incidents) through IDEA-prescribed
procedures," Payne v. Peninsula Sch. Dist., 653
F.3d 863, 882 (9th Cir. 2011) (en banc), and
prevents plaintiffs from using artful pleading to
litigate IDEA issues without first utilizing the
IDEA process, see S. Rep. No. 99-112, at 12, 15
(1985) (add'l views); H.R. Rep. No. 99-296, at 7
(1985).

D.D. ex rel. Ingram v. L.A. Unified Sch. Dist., 18 F.4th 1043,

1049 (9th Cir. 2021) (en banc) (some alterations in D.D.).

Relevant to the central argument of Defendants'

Motion, "Section 1415(l) requires that a plaintiff exhaust the

IDEA's procedures before filing an action under the ADA, the

Rehabilitation Act, or similar laws when (but only when) her

suit 'seek[s] relief that is also available' under the IDEA."

Fry, 137 S. Ct. at 752 (alteration in Fry).  A suit seeks relief

that is also available under the IDEA only if it seeks relief

for the denial of a FAPE.  Id. at 752-53.  As such, § 1415(l)

"requires exhaustion when the gravamen of a complaint seeks

redress for a school's failure to provide a FAPE, even if not

phrased or framed in precisely that way."  Id. at 755.

14

In <u>Fry</u>, the Supreme Court provided two clues to assist with the inquiry into whether the gravamen of a complaint concerns the denial of a FAPE or disability-based discrimination.  The first clue

> can come from asking a pair of hypothetical
> questions.  First, could the plaintiff have
> brought essentially the same claim if the alleged
> conduct had occurred at a public facility that
> was **not** a school—say, a public theater or
> library?  And second, could an **adult** at the
> school—say, an employee or visitor—have pressed
> essentially the same grievance?  When the answer
> to those questions is yes, a complaint that does
> not expressly allege the denial of a FAPE is also
> unlikely to be truly about that subject; after
> all, in those other situations there is no FAPE
> obligation and yet the same basic suit could go
> forward.  But when the answer is no, then the
> complaint probably does concern a FAPE, even if
> it does not explicitly say so; for the FAPE
> requirement is all that explains why only a child
> in the school setting (not an adult in that
> setting or a child in some other) has a viable
> claim.

<u>Id.</u> at 756 (emphases in <u>Fry</u>).  The second clue comes from looking at the history of the proceedings because "prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term."  <u>Id.</u> at 757 (footnote omitted).

**III.  <u>Exhaustion in the Instant Case</u>**

Defendants argue Plaintiff must exhaust their claims under the IDEA because "Plaintiff is seeking an IDEA remedy or

its functional equivalent, prospective injunctive relief to
alter the students' IEPs, and to enforce its constituents'
rights to a FAPE." [Mem. in Supp of Motion at 12 (citation
omitted).]  Plaintiff contends that, because it is required by
state and federal law to advocate for the rights of people with
disabilities, as a Protection and Advocacy Agency, it is not
required to exhaust administrative remedies.  See Mem. in Opp.
at 10-11.  Alternatively, Plaintiff argues that, even if the
exhaustion requirement applies to it, it meets the exceptions to
exhaustion.  See id. at 12-13.

A.   **Whether the Exhaustion Requirement Applies to
     Plaintiff if It Seeks Relief Under the IDEA**

Section 1415(l) states that, "before the filing of a
civil action under such laws seeking relief that is also
available under this subchapter, the procedures under
subsections (f) and (g) shall be exhausted . . . ."  20 U.S.C.
§ 1415(l).  Section 1415(f) and (g) set forth the procedures for
an impartial due process hearing for complaints filed by
"parents or the local educational agency," § 1415(f), and any
aggrieved party's right to appeal the findings and decision made
by a local educational agency, see § 1415(g).

Plaintiff asserts that, because it is neither a parent
nor a local educational agency, the IDEA's exhaustion
requirement is inapplicable to it – assuming that it seeks

16

relief under the IDEA.  See Mem. in Opp. at 11.  A Protection
and Advocacy Program seeking relief that "is closely related to
questions about the provision of FAPE to their constituents"
must ensure administrative remedies are exhausted under the
IDEA.  See S.S. ex rel. S.Y. v. City of Springfield, 332 F.
Supp. 3d 367, 378 (D. Mass. 2018).  Thus, if Plaintiff seeks
relief under the IDEA, exhaustion is required.

### B.   Whether Plaintiff's Complaint Seeks Redress for a Failure to Provide a FAPE

The dispositive question here is whether "the gravamen
of [Plaintiff's C]omplaint seeks redress for [DOE's] failure to
provide a FAPE . . . ."  See Fry, 137 S. Ct. at 755.  The answer
is yes.  Plaintiff asserts a claim directly under the IDEA in
Count IV.  Moreover, Plaintiff's allegations taken as a whole
show that it is seeking redress for DOE's failure to provide a
FAPE to its constituents.  For instance, Plaintiff alleges DOE
fails to provide ABA services to students with ASD during school
hours, which prevents those students from receiving a FAPE.
See, e.g., Complaint at ¶¶ 44-46, 60, 114.  Although Plaintiff
asserts DHS fails to provide medically necessary ABA services
during school hours, see id. at ¶ 27, DOE is responsible for
providing ABA services during school hours, see Peterson Decl.,
Exh. F (May 2017 Memo), at PageID #: 1147.  The crux of
Plaintiff's Complaint, then, necessarily depends on the

allegations that DOE does not provide educationally necessary ABA services to students with ASD during school hours, despite those same students potentially receiving medically necessary ABA services before and after school hours.

Plaintiff also alleges that, because ABA services are not adequately provided to students with ASD during school hours, DOE's "limited special education and related services are insufficient to meet the needs of a student with Autism." [Complaint at ¶ 41.]  DOE's alleged failure to provide ABA services stems from its purported "refus[al] to . . . recognize students' Autism diagnoses when assessing students' needs during the development of an IEP."  [Id. at ¶ 48.]  Plaintiff, in effect, contends the development of IEPs for students with ASD is fundamentally flawed.  See, e.g., id. at ¶¶ 47, 49, 58-59. These allegations concern the underlying issue of whether students with ASD can receive a FAPE.

Applying the two Fry clues is also instructive here. First, Plaintiff could not "have brought essentially the same claim if the alleged conduct had occurred at a public facility that was **not** a school . . . ."  See Fry, 137 S. Ct. at 756 (emphasis in Fry).  That is, Plaintiff could not assert its claims against, for example, "a public theater or library" because those entities are not required to provide students with ABA services or IEPs.  See id.  Similarly, "an employee or

visitor" at the school could not "press[] essentially the same

grievance" because DOE is not required to provide those

individuals with ABA services or IEPs.  See id.  Second, some of

the parents of Plaintiff's constituents invoked the IDEA's

formal procedures, see, e.g., Complaint at ¶¶ 75, 82, which

further strengthens the finding that "the gravamen of [the] suit

is the denial of a FAPE," see Fry, 137 S. Ct. at 757.

Accordingly, the Court concludes that Plaintiff's Complaint

seeks redress, on behalf of its constituents, for failure to

receive a FAPE.

     **C.**    **The Three Exceptions to Exhaustion**

     Plaintiff argues that, even if its Complaint seeks

redress under the IDEA, exhaustion is not required because the

three exceptions to exhaustion apply.  See Mem. in Opp. at 12.

> [E]xhaustion is not required when (1) the
> administrative process would be "futile," (2) the
> claim arises from a policy or practice "of
> general applicability that is contrary to law,"
> or (3) it is improbable "that adequate relief can
> be obtained by pursing administrative remedies
> (e.g. the hearing officer lacks the authority to
> grant the relief sought)." Hoeft [v. Tucson
> Unified Sch. Dist.], 967 F.2d [1298,] 1303-04
> [(9th Cir. 1992)].

Paul G. ex rel. Steve G. v. Monterey Peninsula Unified Sch.

Dist., 933 F.3d 1096, 1101 (9th Cir. 2019).  Plaintiff appears

to conflate futility and adequacy, see Mem. in Opp. at 13, but

they are separate exceptions, and the Court addresses each separately.

       1.   **Futility**

      The administrative process can be deemed futile when "[s]erious due process violations . . . have the practical effect of denying the plaintiffs a forum for their grievances . . . ." Hoeft, 967 F.2d at 1304 (collecting cases). Futility can also be shown when "plaintiffs ha[ve] already taken all measures to secure administrative relief which could reasonably be expected of them." Kerr Ctr. Parents Ass'n v. Charles, 897 F.2d 1463, 1470 (9th Cir. 1990). Here, Plaintiff has not demonstrated that the parents of its constituents have been denied a forum for their grievances, either because no forum exists or because due process violations in the available forum effectively preclude them from obtaining any relief. In other words, Plaintiff does not contend that DOE fails to provide its constituents with meaningful due process hearings. Plaintiff also has not established that its constituents have taken all reasonable measures to secure administrative relief. Indeed, some of its constituents did seek administrative remedies and were ultimately granted educationally-related ABA services. See Complaint at ¶¶ 75, 82. The futility exception, therefore, does not apply.

2.    **General Applicability**

"[A] policy or practice is not necessarily 'systemic' or 'of general applicability' simply because it 'applie[s] to all students' or because the 'complaint is structured as a class action seeking injunctive relief.'"  <u>Student A ex rel. Parent A v. S.F. Unified Sch. Dist.</u>, 9 F.4th 1079, 1084 (9th Cir. 2021) (some alterations in <u>Student A</u>) (quoting <u>Hoeft</u>, 967 F.2d at 1304, 1308).  Rather,

> a claim is "systemic" if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the [IDEA]; but . . . it is not "systemic" if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem.

<u>Doe ex rel. Brockhuis v. Ariz. Dep't of Educ.</u>, 111 F.3d 678, 682 (9th Cir. 1997).  A plaintiff "must demonstrate in addition that the underlying purposes of exhaustion would not be furthered by enforcing the requirement."  <u>Hoeft</u>, 967 F.2d at 1304.

Plaintiff argues it "challenges the legality of the DOE's entire systemic . . . policy to disregard medical ABA prescriptions and instead provide ABA or ABA-like services during school hours only when: (1) the DOE's lesser services are attempted and do not work; and (2) the child exhibits extreme or severe behaviors at school."  [Mem. in Opp. at 14-15 (citations

omitted).]   Defendants contend Plaintiff's challenge is not systemic because they challenge "one component of the special education program and not the policies of the entire education system."  [Reply at 6 (citing Paul G., 933 F.3d at 1096).]   The Court agrees with Defendants.

In Paul G., the Ninth Circuit held that the plaintiff's claim was not systemic because he sought "relief related to only one component of the school district's special education program — in-state residential facilities for adult students."  933 F.3d at 1102 (citations omitted).  Similarly, in Hoeft, the Ninth Circuit held that the plaintiff's complaint "focused[d] on the shortcomings of a particular component of [the school district's] special education program—extended school year services[,]" and, therefore, "[t]he alleged violations d[id] not rise to a truly systemic level in the sense that the IDEA's basic goals [were] threatened on a system-wide basis."  967 F.2d at 1305.  As in Paul G. and Hoeft, here Plaintiff does not assert that the entire special education program is flawed.  Instead, it alleges one component of the program – namely, IEP development related to educationally necessary ABA services for students with ASD – prevents its constituents from receiving a FAPE.  Because Plaintiff only contests one aspect of the special education program, "the

IDEA's basic goals are [not] threatened on a system-wide basis." See id.

Moreover, although Plaintiff argues DOE disregards medically necessary ABA services for students with ASD, DOE is solely responsible for determining when ABA services are educationally necessary for students with ASD during school hours. See Peterson Decl., Exh. F (May 2017 Memo), at PageID #: 1147. Plaintiff does not provide the number of students eligible as ASD who receive medically necessary ABA services outside of school but are denied educationally necessary ABA services during school hours. Some students with ASD, however, do receive educationally necessary ABA services during school hours. See, e.g., Osika Decl., Exh. 10 (July 2020 DOE Report) at 2. To the extent that Plaintiff argues DOE's process in determining whether ABA services are educationally necessary creates "across-the-board administrative barriers," [Mem. in Opp. at 16,] its argument is unpersuasive because Plaintiff's allegations ultimately concern "bad results, not descriptions of unlawful policies or practices," see Student A, 9 F.4th at 1085.

Finally, pursuing administrative remedies would further the purpose of the exhaustion requirement. As the Ninth Circuit stated:

> Exhaustion of the administrative process allows
> for the exercise of discretion and educational
> expertise by state and local agencies, affords

23

> full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

Hoeft, 967 F.2d at 1303 (citing McKart v. United States, 395 U.S. 185, 193-95, 89 S. Ct. 1657, 1662-63(1969)).  "All of these important interests could be furthered by exhaustion in this case."  See Student A, 9 F.4th at 1085.  For instance, exhaustion would likely result in a detailed record that explains the specific development of IEPs related to educationally necessary ABA services as applied to individual students.  Such a detailed record would be helpful in determining whether DOE has unlawful procedures or practices. In light of the foregoing, the general applicability exception does not apply.

### 3. **Inadequacy**

"Administrative remedies are generally inadequate where structural, systemic reforms are sought."  Hoeft, 967 F.2d at 1309 (citations omitted).  "Exhaustion may also be excused because of inadequacy of administrative remedies where the plaintiffs' substantive claims themselves concern the adequacy of the administrative process."  Id. (citation omitted).  "[T]he relevant inquiry is whether the administrative process is adequately equipped to address and resolve the issues

presented." Id. (citation omitted).  Here, the administrative remedies are not inadequate.  Plaintiff's claims do not concern structural, systemic reform.  See *supra* Discussion Section III.C.2.  Plaintiff also does not contest the adequacy of the administrative process.  Although Plaintiff contends the administrative remedies are inadequate because they do not include system-wide injunctive relief, see Mem. in Opp. at 14, "the mere unavailability of injunctive relief does not render the IDEA's administrative process inadequate," Hoeft, 967 F.2d at 1309.  As such, the inadequacy exception to exhaustion does not apply.

     **D.**   **Exhaustion Applied to the ADA and Section 504 Claims**

     Plaintiff's Complaint seeks redress for DOE's alleged failure to provide its constituents with a FAPE, and it has failed to show that any of the exceptions to exhaustion apply. Plaintiff argues that, even if it must ensure that its IDEA claim is exhausted, it is not required to exhaust its ADA and Section 504 claims.  Plaintiff is mistaken.  The IDEA's exhaustion provision "specifies that exhaustion is required 'before the filing of a civil suit . . . seeking **relief** that is also available under [the IDEA].'" Payne, 653 F.3d at 875 (alterations and emphasis in Payne) (quoting 20 U.S.C. § 1415(l)).  This means that

> exhaustion is clearly required when a plaintiff
> seeks an IDEA remedy or its functional
> equivalent.  For example, if a disabled student
> files suit under the ADA and challenges the
> school district's failure to accommodate his
> special needs and seeks damages for the costs of
> a private school education, the IDEA requires
> exhaustion regardless of whether such a remedy is
> available under the ADA, or whether the IDEA is
> mentioned in the prayer for relief.  Again, in
> that case the "relief . . . is also available"
> under the IDEA, see 20 U.S.C. § 1412(a)(10), and
> the student must exhaust his IDEA remedies before
> seeking parallel relief under the ADA.

Id. (alteration in Payne).  The parents of Plaintiff's
constituents must exhaust the IDEA's administrative process.
This requirement applies to Plaintiff's ADA and Section 504
claims because those claims seek relief that is also available
under the IDEA.

### E. Exhaustion Applied to the Medicaid Claim

Defendants argue Plaintiff's Medicaid claim
(Count III) is effectively a claim for denial of a FAPE and,
therefore, must be exhausted under the IDEA as well.  See Mem.
in Supp. of Motion at 25.  Plaintiff contends its Medicaid claim
is independent from its other claims because it asserts that
"DHS fails to 'provide and ensure access to medically necessary
ABA services . . . during school hours' and that its delegation
to the DOE for services at school violates the Medicaid
Act . . . ."  [Mem. in Opp. at 22 (emphasis omitted) (quoting
CSF ¶¶ 10-11).]

The Ninth Circuit has held that

> under the EPSDT provisions [of the Medicaid Act],
> states have an obligation to cover every type of
> health care or service necessary for EPSDT
> corrective or ameliorative purposes that is
> allowable under [42 U.S.C.] § 1396d(a).  The
> states also have an obligation to see that the
> services are provided when screening reveals that
> they are medically necessary for a child.  This
> obligation is created by [42 U.S.C.]
> § 1396a(a)(43)(C), which states that a state plan
> must provide for arranging, directly or through
> referral, necessary corrective treatment under
> the EPSDT obligation.  See
> § 1396a(a)(43)(C) . . . .

Katie A., ex rel. Ludin v. Los Angeles Cnty., 481 F.3d 1150,

1158 (9th Cir. 2007).  "States also must ensure that the EPSDT

services provided are reasonably effective."  Id. at 1159.

"While the states must live up to their obligations to provide

all EPSDT services, the statute and regulations afford them

discretion as to how to do so."  Id.  "In general, the EPSDT

provisions require only that the individual services listed in

§ 1396d(a) be provided, without specifying that they be provided

in any particular form."  Id. at 1157.

DHS ensures ABA services are provided to individuals

with ASD before and after school when medically necessary.  See

Peterson Decl., Exh. F (May 2017 Memo) at PageID #: 1147.  Thus,

Plaintiff does not argue DHS has failed to provide any medically

necessary ABA services to all students with ASD.  Plaintiff,

instead, contends DHS should also be providing medically

necessary ABA services to students with ASD during school hours.
Specifically, it relies on Chisholm v. Hood, 110 F. Supp. 2d 499
(E.D. La. 2000), to argue "DHS cannot abandon EPSDT recipients
during the school day by forcing them to accept the DOE's ABA
providers where those providers are not qualified or licensed
and are providing services that the DHS does not recognize for
Medicaid reimbursement."  [Mem. in Opp. at 24 (citing Chisholm,
110 F. Supp. 2d at 506).]  Plaintiff's argument is unpersuasive.
Chisholm is not binding on this Court, but even if this Court
considered the reasoning in that case, it does not support
Plaintiff's contention.  There, the district court stated "that
schools are not under the EPSDT mandate to provide all services
needed to correct or ameliorate children's health conditions.
Rather, the schools' mandate is to provide services that will
benefit children's schooling and has additionally been
interpreted as applying only to services during school hours."
Chisholm, 110 F. Supp. 2d at 507 (citing Cedar Rapids Community
Sch. Dist. v. Garret, 526 U.S. 66, 72–75, 119 S. Ct. 992, 143 L.
Ed. 2d 154 (1999)).

     The district court there also concluded that the
agency strictly limited medically necessary services to only
schools, which prohibited inclusion of those services within
home health services.  Id. at 506.  As such, the agency's
practices prevented the class representative from receiving any

of the medically necessary services because she was confined to her home.  Id.  The court stated that "[a] policy which **completely prevents** eligible recipients from receiving these medically necessary services can hardly be considered as complying with the federal mandate."  Id. (emphasis added). Unlike in Chisholm, here, medically necessary ABA services are not completely prevented from being provided.  Indeed, those services are provided to qualified individuals at all times, except during school.

To the extent that Plaintiff argues DHS must provide medically necessary ABA services to students during school hours, such an argument fails because it is DOE's responsibility to provide educationally necessary ABA services during school hours.  See Peterson Decl., Exh. F (May 2017 Memo), at PageID #: 1147.  Plaintiff's Medicaid claim is in effect an IDEA claim and must be exhausted.

F.    **Exhaustion Summary**

There are no genuine issues of material fact, and Plaintiff's ADA, IDEA, and Section 504 claims on behalf of its constituents fail as a matter of law because those claims were not exhausted before the filing of this suit.  Plaintiff's Medicaid claim must also be exhausted insofar as it is a veiled IDEA claim.  Accordingly, summary judgment is granted in favor of Defendants on Counts I, II, III, and IV.  See Fed. R. Civ. P.

56(a) (stating summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

## IV.  <u>Plaintiff's § 1983 Claims</u>

Defendants contend Plaintiff is precluded from asserting § 1983 claims for alleged violations of the IDEA, Section 504 of the Rehabilitation Act, and the ADA.  <u>See</u> Mem. in Supp. of Motion at 23.  Plaintiff argues its claims under § 1983 are proper.  [Mem. in Opp. at 20.]

> In general, "[a] plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) 'the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983,' or (2) 'Congress has foreclosed such enforcement of the statute in the enactment itself.'"  <u>Wilder v. Va. Hosp. Ass'n</u>, 496 U.S. 498, 508, 110 S. Ct. 2510, 110 L. Ed. 2d 455 (1990) (quoting <u>Wright v. City of Roanoke Redevelopment & Hous. Auth.</u>, 479 U.S. 418, 423, 107 S. Ct. 766, 93 L. Ed. 2d 781 (1987) (alteration in original) (footnote omitted)).  Congress' intent to foreclose § 1983 actions for the violation of certain statutes may be implied when "the statutes at issue themselves provide[] for private judicial remedies, thereby evidencing congressional intent to supplant the § 1983 remedy."  <u>Wright</u>, 479 U.S. at 427.

> As to the IDEA, the Ninth Circuit, in <u>Blanchard v. Morton Sch. Dist.</u>, 509 F.3d 934, 938 (9th Cir. 2007), "join[ed] the First, Third, Fourth, and Tenth Circuits [by] hold[ing] that the comprehensive enforcement scheme of the IDEA evidences Congress' intent to preclude a § 1983 claim for the violation of rights under the IDEA."

As to the ADA and Rehabilitation Act,
Plaintiffs cannot recover under § 1983. "[A]
plaintiff cannot bring an action under 42 U.S.C.
§ 1983 . . . to vindicate rights created by
Title II of the ADA or Section 504 of the
Rehabilitation Act." Vinson v. Thomas, 288 F.3d
1145, 1156 (9th Cir. 2002). The comprehensive
remedial scheme of those acts bar such claims.
Id. Further, courts addressing this issue have
found that "the ADA and Rehabilitation Act
provide 'sufficiently comprehensive' remedies for
violations of plaintiff's rights," such that a
plaintiff is foreclosed from recovering under
§ 1983 as well. Bartlett v. N.Y. State Bd. of
Law Examiners, 970 F. Supp. 1094, 1145 (S.D.N.Y.
1997), aff'd in part and vacated in part on other
grounds, 156 F.3d 321 (2d Cir. 1998), vacated on
other grounds, 527 U.S. 1031, 119 S. Ct. 2388,
144 L. Ed. 2d 790 (1999); see Chernoff v. City of
N.Y., 2009 WL 816474, at *5 n. 7 (E.D.N.Y.
Mar. 26, 2009) (citing Bartlett, 970 F. Supp. at
1145); Credle-Brown v. Conn. Dep't of Children &
Families, 2009 WL 1789430, at *1 (D. Conn.
June 24, 2009)).

Jefferies v. Albert, Civil No. 09-00156 JMS/KSC, 2009 WL

4064799, at *7 (D. Hawai`i Nov. 24, 2009) (alterations in

Jefferies). Here, Plaintiff cannot bring its IDEA, ADA, and

Section 504 claims under § 1983. As such, summary judgment is

granted in favor of Defendants on Counts I, II, and IV for this

additional reason.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion for

Summary Judgment, filed on July 29, 2020, is HEREBY GRANTED, and

summary judgment is granted in favor of Defendants as to all of

Plaintiff's claims.  The Clerk's Office is directed to enter
final judgment and close the case immediately.

        IT IS SO ORDERED.

        DATED AT HONOLULU, HAWAII, August 31, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**HAWAII DISABILITY RIGHTS CENTER, ETC. VS. CHRISTINA KISHIMOTO,
ETC., ET AL; CV 18-00465 LEK-RLP; ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**