UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| HAWAI`I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its constituents;<br><br>            Plaintiff,<br><br>    vs.<br><br>CHRISTINA KISHIMOTO, in her official capacity as superintendent of the state of Hawai`i, Department of Education; AND PANKAJ BHANOT, in his official capacity as Director of the State of Hawaii, Department of Human Services;<br><br>            Defendants. | CIV. NO. 18-00465 LEK- KJM |

**ORDER DENYING DEFENDANT'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Before this Court is the Motion for Partial Judgment
on the Pleadings ("Motion"), filed on November 14, 2025, by
Defendant Ryan Yamane, in his official capacity ("Yamane").
[Dkt. no. 190.] Plaintiff Hawai`i Disability Rights Center
("Plaintiff") filed its memorandum in opposition on December 2,
2025, and Yamane filed his reply on December 16, 2025. [Dkt.
nos. 194, 196.] The Motion came on for hearing on January 14,
2026 ("1/14 Hearing"). For the reasons set forth below, the
Motion is denied.

## BACKGROUND

Plaintiff brought the instant action against the former defendants Christina Kishimoto ("Kishimoto"), in her official capacity as Superintendent of the State of Hawai`i, Department of Education ("DOE"), and Pankaj Bhanot ("Bhanot"), in his official capacity as Director of the State of Hawai`i, Department of Human Services ("DHS"), in a Complaint filed on November 28, 2018. [Dkt. no. 1.] On September 25, 2025, Yamane and Defendant Keith Hayashi ("Hayashi"), in his official capacity (collectively "Defendants"), filed a notice of their substitution of Bhanot and Kishimoto as the defendants pursuant to Federal Rule of Civil Procedure 25(d) ("9/25/25 Notice"). See dkt. no. 177.[1]

Plaintiff alleges the following claims: a Title 42 United States Code Section 1983 claim against DOE and DHS for violations of the Americans with Disabilities Act ("ADA"), Title 42 United States Code Section 12101, et seq. ("Count I"); [Complaint at pgs. 16-17;] a Section 1983 claim against DOE and DHS for violations of Section 504 of the Rehabilitation Act, Title 29 United States Code Section 701 et seq. ("Count II"); [id. at pgs. 17-19;] a Section 1983 claim against DHS for

_____

[1] Hayashi is the current DOE Superintendent, and Yamane is the current DHS Director. See 9/25/25 Notice at 2.

2

violations of the Medicaid Act, Title 42 United States Code Section 1396, *et seq.* ("Count III"); [id. at pgs. 19-20;] and a Section 1983 claim against DOE for violations of the Individuals with Disabilities Education Act ("IDEA"), Title 20 United States Code Section 1400 *et seq.* ("Count IV"), [id. at pgs. 20-21].

On August 31, 2022, this Court filed an order granting summary judgment in favor of Kishimoto and Bhanot ("8/31/22 Order"). [Dkt. no. 147.[2]] Plaintiff appealed. See Plaintiff's Amended Notice of Appeal, filed 9/30/22 (dkt. no. 149). On December 3, 2024, the Ninth Circuit Court of Appeals affirmed in part and reversed in part the 8/31/22 Order. See Ninth Circuit Opinion (dkt. no. 155).[3] The Ninth Circuit affirmed the dismissal of the IDEA claim (Count IV) because Plaintiff was not exempt from the administrative exhaustion requirement under the IDEA, and it failed to prove that any exceptions to the exhaustion requirement, such as futility or systemic failure, applied. See Hawai`i Disability Rts. Ctr., 122 F.4th at 368. The Ninth Circuit reversed the dismissal of the ADA, Rehabilitation Act,

---

[2] The 8/31/22 Order is also available at 2022 WL 3915472.

[3] The Ninth Circuit's Opinion was originally entered on November 26, 2024, [dkt. no. 153,] but was revised and reentered by the Ninth Circuit on December 3, 2024. See dkt. no. 155. The Ninth Circuit Opinion, as revised, is also available at Hawai`i Disability Rts. Ctr. v. Kishimoto, 122 F.4th 353 (9th Cir. 2024). The Ninth Circuit's Mandate was issued on December 18, 2024. [Dkt. no. 156.]

and Medicaid Act claims, *i.e.*, Counts I-III, ruling that these non-IDEA claims do not seek relief for the denial of a "free appropriate public education" ("FAPE") and thus are not subject to the IDEA's administrative exhaustion mandate. See id. at 370-71. The Ninth Circuit remanded the case for further proceedings as to Counts I-III. See id. at 371.

Because Yamane only seeks judgment on the pleadings as to Count III of the Complaint, [Motion, Mem. in Supp. at 1,] this Court discusses the relevant background specific to that count.

Plaintiff brings this action on behalf of its constituents: children and young adults under the age of twenty-one who have been diagnosed with Autism Spectrum Disorder ("ASD" or "Autism") and their parents or guardians. [Complaint at ¶¶ 9, 70-71.] Plaintiff alleges that DHS denies students with Autism access to certain services, specifically Applied Behavioral Analysis ("ABA"), during the school day, even when ABA is deemed medically necessary by the constituents' medical providers. [Id. at ¶¶ 46-47.] Plaintiff contends that this denial violates the Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") provision of the Medicaid Act ("EPSDT provision" or "EPSDT provisions"). [Id. at ¶¶ 25, 101.]

The EPSDT provision "requires designated state agencies, here DHS, to provide free screening and services to

4

individuals who qualify for Medicaid." Hawai\`i Disability Rts.
Ctr., 122 F.4th at 361 (citing 42 U.S.C. § 1396d(a)(4)(B)); see
also id. at 360-61 ("DHS is the Hawaii agency designated to
administer Hawaii's Medicaid program, including ensuring
compliance with federal requirements." (citing Haw. Rev. Stat.
§ 346-14; 42 U.S.C. § 1396a(a)(5))). Accordingly, "DHS provides
medically necessary ABA to Medicaid beneficiaries with autism."
Id. at 361 (citing 42 U.S.C. § 1396d(a)(4)(B), (r)(5)). Further,
"[t]he Medicaid Act does not allow DHS to 'prohibit or
restrict[] payment . . . for medical assistance for covered
services furnished to a child with a disability because such
services are included in the child's [Individualized Education
Program ('IEP')]." Id. (some alterations in Hawai\`i Disability
Rts. Ctr.) (quoting 42 U.S.C. § 1396b(c)).

    Plaintiff alleges that DHS improperly delegated its
responsibility to provide these services to DOE, even though DHS
allegedly knew that DOE does not provide or accommodate ABA
services for its students. [Complaint at ¶ 102.] Relevant to
Count III, Plaintiff seeks injunctive relief to compel DHS to
"provide adequate medically necessary ABA during school hours
for Medicaid recipients," [id. at pg. 21, ¶ (a)i,] and
declaratory relief, [id. at pg. 23, ¶ (c)iii].

    Yamane seeks judgment on the pleadings pursuant to
Federal Rule of Civil Procedure 12(c) as to Count III. See

Motion at 2; Motion, Mem. in Supp. at 1. Further, he argues that
Plaintiff should not be granted leave to amend. See Mem. in
Supp. at 1. Yamane argues that, pursuant to the United States
Supreme Court's decision in Medina v. Planned Parenthood South
Atlantic, 145 S. Ct. 2219 (2025), Section 1983 does not provide
a private cause of action for enforcement of the EPSDT
provision. See id. at 4-5.

### STANDARD

>     FRCP 12(c) permits a motion for judgment on
> the pleadings. "[J]udgment on the pleadings is
> properly granted when, 'taking all the
> allegations in the pleadings as true, the moving
> party is entitled to judgment as a matter of
> law.'" Gregg v. Haw., Dep't of Pub. Safety, 870
> F.3d 883, 887 (9th Cir. 2017) (quoting Nelson v.
> City of Irvine, 143 F.3d 1196, 1200 (9th Cir.
> 1998)). . . .

Lerette v. City & Cnty. of Hawai`i, CIV. NO. 20-00202 JAO-RT,
2023 WL 4084923, at *5 (D. Hawai`i June 20, 2023) (alterations
in Lerette). A "motion for judgment on the pleadings is
functionally equivalent to [a Rule] 12(b)(6) motion to dismiss,
so courts apply the same standards of review for both." Id.
(citing Gregg, 870 F.3d at 887).

### DISCUSSION

Yamane argues that "the relevant provisions in the
Medicaid Act lack the necessary 'rights-creating' language," and
that, pursuant to Medina, the omission of such language is fatal
to Count III. See Motion, Mem. in Supp. at 4-5. This Court first

6

discusses Medina and its related precedents and then turns to
the language of the Medicaid Act before deciding the merits of
the Motion.

## I.    Statutory Rights-Creating Language

In Medina, the Supreme Court "outlin[ed] how to
determine whether a statute confers an individually enforceable
right under § 1983." 145 S. Ct. at 2229.

> To prove that a statute secures an
> enforceable right, privilege, or immunity, and
> does not just provide a benefit or protect an
> interest, a plaintiff must show that the law in
> question "clear[ly] and unambiguous[ly]" uses
> "rights-creating terms." [Gonzaga Univ. v. Doe,
> 536 U.S. 273,] 284, 290, 122 S. Ct. 2268[, 153 L.
> Ed. 2d 309 (2002)]. In addition, the statute must
> display "'an unmistakable focus'" on individuals
> like the plaintiff. Id., at 284, 122 S. Ct. 2268
> (emphasis deleted); accord, [Health and Hospital
> Corporation of Marion Cty. v.] Talevski, 599 U.S.
> [166,] 183, 143 S. Ct. 1444[, 216 L. Ed. 2d 183
> (2023)]. We have described this as a "stringent"
> and "demanding" test. Id., at 180, 186, 143 S.
> Ct. 1444; accord, post, at 2250 - 2251 (JACKSON,
> J., dissenting) (describing Gonzaga as setting
> forth "a restrictive test"). And even for the
> rare statute that satisfies it, this Court has
> said, a § 1983 action still may not be available
> if Congress has displaced § 1983's general cause
> of action with a more specific remedy. Rancho
> Palos Verdes v. Abrams, 544 U.S. 113, 120, 125 S.
> Ct. 1453, 161 L. Ed. 2d 316 (2005).
>
> These rules seek to "vindicat[e] the
> separation of powers." Talevski, 599 U.S. at 183,
> 143 S. Ct. 1444. To be sure, there was a time in
> the mid-20th century when "the Court assumed it
> to be a proper judicial function to provide"
> whatever "remedies" it deemed "necessary to make
> effective a statute's purpose." Ziglar v. Abbasi,
> 582 U.S. 120, 131-132, 137 S. Ct. 1843, 198 L.

7

Ed. 2d 290 (2017) (internal quotation marks
omitted). But, as this Court has since come to
appreciate, no statute pursues any single
"purpos[e] at all costs." American Express Co. v.
Italian Colors Restaurant, 570 U.S. 228, 234, 133
S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (internal
quotation marks omitted). And, often enough,
Congress may "not wish to pursue [a] provision's
purpose to the extent of authorizing private
suits." Hernández v. Mesa, 589 U.S. 93, 100, 140
S. Ct. 735, 206 L. Ed. 2d 29 (2020). After all,
the decision whether to let private plaintiffs
enforce a new statutory right poses delicate
questions of public policy. New rights for some
mean new duties for others. And private
enforcement actions, meritorious or not, can
force governments to direct money away from
public services and spend it instead on
litigation. See ibid. The job of resolving how
best to weigh those competing costs and benefits
belongs to the people's elected representatives,
not unelected judges charged with applying the
law as they find it. See Alexander v. Sandoval,
532 U.S. 275, 286, 121 S. Ct. 1511, 149 L. Ed. 2d
517 (2001); Gonzaga, 536 U.S. at 285, 122 S. Ct.
2268.

Id. at 2229–30 (some alterations in Medina). Recipients of

federal grants

must "voluntarily and knowingly" consent to
answer private § 1983 enforcement suits before
they may proceed. Pennhurst [State School and
Hospital v. Halderman], 451 U.S. [1,] 17, 101 S.
Ct. 1531[, 67 L. Ed. 2d 694 (1981)]; see id., at
28, 101 S. Ct. 1531. And that consent cannot be
fairly inferred if the federal spending-power
statute fails to provide "clear and unambiguous"
notice that it creates a personally enforceable
right. Gonzaga, 536 U.S. at 290, 122 S. Ct. 2268.

Id. at 2234.

Applying these principles, the Supreme Court in Medina

held that Section 1396a(a)(23)(A) of the Medicaid Act, also

8

referred to as the "any-qualified-provider provision,"[4] does not
confer an individually enforceable right because, among other
reasons, the provision's "language speaks to what a State must
do to participate in Medicaid," and that its "focus on aggregate
compliance" suggests that the provision "addresses a State's
obligations to the federal government, not the rights of any
particular person." See id. at 2234-35 (citation and internal
quotation marks omitted). As support for its holding, the
Supreme Court noted that the any-qualified-provider provision
was nested under a subsection in the Medicaid Act titled
"Contents," which outlines conditions that "a state plan must
include to qualify for federal funding." Id. at 2236 (citing
§ 1396a(a)). Those conditions, the Supreme Court further noted,
"are directed to the Secretary of Health and Human Services, who
must 'approve any plan' that meets them." Id. (some citations

---

[4] Under the any-qualified-provider provision, a state plan
must provide that

> any individual eligible for medical assistance
> (including drugs) may obtain such assistance from
> any institution, agency, community pharmacy, or
> person, qualified to perform the service or
> services required (including an organization
> which provides such services, or arranges for
> their availability, on a prepayment basis), who
> undertakes to provide him such services[.]

See 42 U.S.C. § 1396a(a)(23)(A); see also Medina, 145 S. Ct. at
2227 (referring to Section 1396a(a)(23)(A) as "Medicaid's any-
qualified-provider provision").

omitted) (quoting § 1396a(b)). Finally, the Supreme Court
indicated the "mandatory terms" in the any-qualified-provider
provision — such as "must," "provide," or "shall" — do not
necessarily create individual rights. See id. (quotation marks
omitted). Accordingly, because the language in
Section 1396a(a)(23)(A) did not clearly and unambiguously confer
individual rights, the Supreme Court held that the plaintiffs
lacked an individual right enforceable through Section 1983. See
id. at 2239.

      In Talevski, the Supreme Court noted that "Gonzaga
sets forth [the] established method for ascertaining" whether a
spending-power statute "unambiguous[ly] confer[s]" an
enforceable right. Talevski, 143 S. Ct. at 1457. As established
in Gonzaga and clarified in Talevski, the test for analyzing
whether a spending-power statute contains a right enforceable
via a Section 1983 private cause of action is twofold. First,
courts must rely on "traditional tools of statutory construction
to assess whether Congress has 'unambiguously conferred'
'individual rights upon a class of beneficiaries' to which the
plaintiff belongs." Id. (some citations omitted) (quoting
Gonzaga, 536 U.S. at 283, 285–86, 122 S. Ct. 2268). Second, if a
court concludes that a spending-power statute "unambiguously
secures rights" because it contains the necessary rights-
creating, individual-centric language, then a defendant can

10

rebut that presumption by showing that Congress either explicitly or implicitly intended to preclude private enforcement. See id. at 1459.

## II.  **The Medicaid Act**

The Medicaid Act, including its provisions such as Section 1396a(a), is a spending-power statute. See Medina, 145 S. Ct. at 2227. Before this Court can decide whether the Medicaid Act confers to Plaintiff an individually enforceable right under Section 1983 to bring the type of claim asserted in Count III, see Medina, 145 S. Ct. at 2229, it must first identify which statutory provisions are at issue. Plaintiff argues that the following sections of the Medicaid Act constitute the EPSDT provisions in dispute: Sections 1396a(a)(8), 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4)(B), 1396d(a)(13), and 1396d(r)(5). [Mem. in Opp. at 6.] Yamane, on the other hand, argues that Section 1396a(a)(43) is the only EPSDT provision at issue in the instant case. See Motion, Mem. in Supp. at 8; see also Reply at 3 & n.1 (pointing out that the Complaint did not identify the specific provisions at issue in Count III and suggesting that this failure provides alternate grounds for dismissal). Yamane nevertheless addresses Sections 1396a(a)(8), 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4)(B), and 1396d(r) in his Reply. See, e.g., Reply at 5-6, 9-11, 13-14.

The Complaint does not identify the specific EPSDT provisions at issue. See generally Complaint. It does, however, identify Section 1396 as the statutory basis for Count III. See id. at pg. 19. This Court possesses the authority to direct Plaintiff to file an amended complaint that identifies the provisions of the Medicaid Act at issue in Count III. See, e.g., Lieblong v. Abella, 503 F. Supp. 3d 1011, 1021 (D. Hawai`i 2020) (citing Curry v. Baca, 497 F. Supp. 2d 1128, 1138 (C.D. Cal. 2007)); cf. Shaughnessy v. Hawai`i, Civil No. 09-00569 JMS/BMK, 2010 WL 2573355, at *6 (D. Hawai`i June 24, 2010) (directing the plaintiffs to state the provisions of the Medicaid Act at issue in the dispute if the plaintiffs filed an amended complaint). This Court, however, declines to exercise this authority.

The Ninth Circuit in Hawai`i Disability Rts. Ctr. referred to the following EPSDT provisions of Section 1396 in its substantive analysis of Count III: Sections 1396a(a)(5), 1396a(a)(43), 1396b(c), 1396d(a)(4)(B), and 1396d(r)(5). See 122 F.4th at 360-61, 370-71. This Court, pursuant to the Ninth Circuit's identification of Sections 1396a(a)(5), 1396a(a)(43), 1396b(c), 1396d(a)(4)(B), and 1396d(r)(5) in its discussion of Count III, shall consider the same statutory sections as the EPSDT provisions at issue in Count III. Because Yamane also addressed Sections 1396a(a)(8) and 1396a(a)(10)(A) in his Reply, [Reply at 5-6, 9-11, 13-14,] this Court will consider those

provisions as part of the EPSDT provisions at issue
(collectively with Sections 1396a(a)(5), 1396a(a)(43), 1396b(c),
1396d(a)(4)(B), and 1396d(r)(5), "EPSDT Provisions at Issue").

A state that participates in Medicaid must either
establish or designate an agency to both administer that state's
medical assistance plan and supervise compliance with federal
requirements, or establish or designate one agency to administer
the state's plan and another agency to supervise compliance. See
42 U.S.C. § 1396a(a)(5); see also Hawai`i Disability Rts. Ctr.,
122 F.4th at 360-61 ("DHS is the Hawaii agency designated to
administer Hawaii's Medicaid program, including ensuring
compliance with federal requirements." (citing Haw. Rev. Stat.
§ 346-14; 42 U.S.C. § 1396a(a)(5))). Sections 1396a(a)(8) and
1396a(a)(43) mandate that the state plan for medical assistance
must

> (8)  provide that all individuals wishing to
> make application for medical assistance under the
> plan shall have opportunity to do so, and that
> such assistance shall be furnished with
> reasonable promptness to all eligible
> individuals;
>
> . . . .
>
> (43) provide for—
>
> (A) informing all persons in the State
> who are under the age of 21 and who have
> been determined to be eligible for medical
> assistance including services described in
> section 1396d(a)(4)(B) of this title, of the
> availability of early and periodic

13

screening, diagnostic, and treatment services as described in section 1396d(r) of this title and the need for age-appropriate immunizations against vaccine-preventable diseases,

(B) providing or arranging for the provision of such screening services in all cases where they are requested,

(C) arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services, and

(D) reporting to the Secretary (in a uniform form and manner established by the Secretary, by age group and by basis of eligibility for medical assistance, and by not later than April 1 after the end of each fiscal year, beginning with fiscal year 1990) the following information relating to early and periodic screening, diagnostic, and treatment services provided under the plan during each fiscal year:

(i) the number of children provided child health screening services,

(ii) the number of children referred for corrective treatment (the need for which is disclosed by such child health screening services),

(iii) the number of children receiving dental services, and other information relating to the provision of dental services to such children described in section 1397hh(e) of this title and

(iv) the State's results in attaining the participation goals set for the State under section 1396d(r) of

14

this title[.]

Id. (footnote omitted). Furthermore, a state plan for medical assistance must provide "for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5) . . . of section 1396d(a) of this title," to "all individuals" meeting specified financial eligibility standards. See 42 U.S.C. § 1396a(a)(10)(A)(i); see also § 1396a(a)(10)(A)(i)(I)-(IX) (financial eligibility categories).

Section 1396d(a), in turn, defines "medical assistance" as the "payment of part or all of the cost of the following care and services or the care and services themselves, or both . . . for individuals," and states at Section 1396d(a)(4)(B) that the following services fall under the definition of medical assistance: "early and periodic screening, diagnostic, and treatment services (as defined in subsection (r)) for individuals who are eligible under the plan and are under the age of 21[.]"

Section 1396d(r)(5) states that "[t]he term 'early and periodic screening, diagnostic, and treatment services' means the following items and services," including, "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) to correct or ameliorate defects and physical and mental illnesses and conditions

discovered by the screening services, whether or not such services are covered under the State plan." As discussed *supra* Background, "[t]he Medicaid Act does not allow DHS to 'prohibit or restrict[] payment . . . for medical assistance for covered services furnished to a child with a disability because such services are included in the child's [IEP]." Hawai`i Disability Rts. Ctr., 122 F.4th at 361 (alterations in Hawai`i Disability Rts. Ctr.) (quoting 42 U.S.C. § 1396b(c)). With these provisions in mind, this Court turns to the merits of the Motion.

**III.  The EPSDT Provisions Contain Rights-Enforcing Language**

   **A.   Statutory Interpretation of the Medicaid Act**

        When interpreting a statute, this Court begins with the statutory text; if the text is unambiguous, the inquiry ends. See Doe v. Garland, 109 F.4th 1188, 1195 (9th Cir. 2024) (quoting BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004)). When a court interprets a statute, "every clause and word of a statute should have meaning." United States ex rel. Polansky v. Exec. Health Res., Inc., 143 S. Ct. 1720, 1731 (2023) (citation and internal quotation marks omitted). Further, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Roberts v. Sea-Land Servs., Inc., 566 U.S. 93, 101 (2012) (quotation marks and citation omitted); see also Medina, 145 S. Ct. at 2235-36 (examining "surrounding

16

statutory context" and concluding that the any-qualified-provider provision of the Medicaid Act did not confer individual rights). As it relates to "spending-power statutes like Medicaid," the Supreme Court in Medina made clear that to confer rights to individuals such statutes must expressly 1) "display an unmistakable focus on individuals like the plaintiff," and 2) "clearly and unambiguously uses rights-creating terms." See Medina, 145 S. Ct. at 2229-30 (alterations, citations, and internal quotation marks omitted). In considering these factors, this Court recognizes that, for spending-power statutes, private causes of action are the exception, not the rule, because "when a State violates [the] conditions [of the spending-power statutes], the typical remedy is not a private enforcement suit but rather action by the Federal Government to terminate funds to the State." See id. at 2228 (citation and internal quotation marks omitted).

Yamane emphasizes that Section 1396a(a)(43), one of the provisions at issue, is located within the "Contents" subsection of Section 1396a(a) – the same location as the any-qualified-provider provision at issue in Medina. See Motion, Mem. in Supp. at 10 (some citations omitted) (citing Medina, 145 S. Ct. at 2236). He argues that, since the Supreme Court in Medina found that the any-qualified-provider provision's structural placement was significant to its analysis, this Court

17

should find that Section 1396a(a)(43)'s placement in the
Contents subsection is also significant. See id. at 10, 14.
Yamane further argues that this placement stands in contrast to
the rights-creating provisions identified in Talevski, which
were set apart to alert state grantees of their potential
liability in private suits. [Id. at 10-11 (citing Medina, 145 S.
Ct. at 2236).]

        While it is true that Section 1396a(a)(43) is nested
in the same subsection of the Medicaid Act as the any-qualified-
provider provision, the Supreme Court acknowledged in Medina
that the placement of a provision does not, standing alone,
"suffice to prove that the any-qualified-provider provision is
unenforceable under § 1983." See Medina, 145 S. Ct. at 2236
(citation omitted). Indeed, in Talevski, the Supreme Court found
that several statutory provisions that were incorporated by
reference through Section 1396a(a)(28) of the Medicaid Act were
individually enforceable through Section 1983. See Talevski, 143
S. Ct. at 1456 & n.10 (discussing Medicaid Act-related
provisions of the Federal Nursing Home Reform Act ("FNHRA") "as
codified in the U. S. Code (§§ 1396a(a)(28), 1396r)" and noting
that FNHRA "added a materially identical section to the
Medicare-focused portion of the Social Security Act" (citations
omitted)); id. at 1455-60 (finding §§ 1396r(c)(1)(A)(ii),
1396r(c)(2)(A) to be individually enforceable and discussing

18

§ 1396a(a)(28) in its substantive analysis of the enforceable provisions). Medina, therefore, does not categorically bar Section 1983 enforcement for provisions housed in Section 1396a(a); rather, Medina reaffirms that the primary inquiry remains a textual one focused on whether the relevant provision uses rights-creating terms with an unmistakable focus on individuals. See Medina, 145 S. Ct. at 2234-36.

Turning then to the language of the EPSDT Provisions at Issue, this Court finds that, unlike the any-qualified-provider provision at issue in Medina, which the Supreme Court found to be focused on a state's administrative obligations to participate in Medicaid, see id. at 2235, the EPSDT Provisions at Issue constitute a mandatory directive focused squarely on individuals.

Although its opinion predates Medina, a district court in the Northern District of Georgia applied Gonzaga and Talevski to find that some of the EPSDT Provisions at Issue in the instant action provide rights that can be enforced by individuals through Section 1983 actions. See, e.g., Isaac A. v. Carlson, 775 F. Supp. 3d 1296, 1335 (N.D. Ga. 2025). The district court found:

> The first rights-creating provision is
> § 1396a(a)(10)(A). Under § 1396a(a)(10)(A),
> Georgia "must" make certain medical assistance
> available to children under 21. Related statutory
> provisions flesh out this right. Specifically,

19

§ 1396d(a)(4)(B) then explains that one type of "medical assistance" that a state "**must**" provide is EPSDT services for individuals under 21. And under § 1396d(r)(5), these EPSDT services include all health care, diagnostic services, and treatments "necessary . . . to correct or ameliorate . . . conditions" discovered through screening services. Importantly, even where particular EPSDT services or treatments are not included in a state's Medicaid plan, **the state must provide a service if it is necessary to correct or ameliorate the child's condition.** See 42 U.S.C. § 1396d(r)(5). And, finally, in providing the required EPSDT services, Georgia "must" arrange for (either directly or through referrals to appropriate agencies or organizations) necessary corrective treatment disclosed by screening services. See id. § 1396a(a)(43)(C). So, taking these provisions together, eligible individuals under 21 "must" be provided with health care and treatments necessary to correct or ameliorate their conditions, as arranged for by the state and **regardless** of whether the service is included in the state's Medicaid plan.

The second rights-provision is § 1396a(a)(8). Under § 1396a(a)(8), Georgia "must" furnish the required EPSDT services with "reasonable promptness."

As discussed more below, these two provisions create § 1983-enforceable rights in eligible children under 21 to (1) receive EPSDT care necessary to correct or ameliorate their conditions and (2) receive that care with "reasonable promptness."

These relevant statutory provisions are plainly "phrased in terms of persons benefitted" — here, financially eligible children under 21. See 42 U.S.C. § 1396a(a)(10)(A) (noting that the state plan must provide for EPSDT medical assistance to "all individuals" under 21 who are financially eligible). The "individual focus" in the text of the relevant provisions is plain. See id. § 1396d(a)(4)(B) (noting that EPSDT services

20

are required to be provided "for **individuals** who
are eligible under the plan and are under the age
of 21") (emphasis added); id. § 1396a(a)(8)
(mandating that the state must provide EPSDT
services "with reasonable promptness to **all
eligible individuals**") (emphasis added).
Accordingly, the text of the statute uses
"individual-centric" language with an
"unmistakable focus on the benefited class."
Talevski, 599 U.S. at 183, 143 S. Ct. 1444
(quoting Gonzaga, 536 U.S. at 284, 287, 122 S.
Ct. 2268). This focus on the benefitted class is
consistent with the purpose of the Medicaid Act,
which is to enable states to provide medical
assistance and rehabilitation services to low-
income children and disabled individuals. See 42
U.S.C. § 1396-1.

In addition, the relevant provisions include
rights-creating language. Section 1396a(a)(10)(A)
mandates that a state "**must provide**" EPSDT
services to eligible individuals. This is
explicit rights-creating language comparable to
the "no person shall" in Titles VI and IX of the
Civil Rights Act. See Gonzaga, 536 U.S. at 287,
122 S. Ct. 2268 (explaining that the "no person
shall . . . be subjected to discrimination"
language of Title VI and IX was an example of
individual "rights-creating" language).
Similarly, § 1396a(a)(8) mandates that services
"must" be provided with reasonable promptness.
Again, this mandatory language is rights-
creating. In light of this mandatory and
individual-centric language, there can be no
doubt that Congress intended to create a federal
right for the identified class, *i.e.*, low-income
children under 21.

Id. at 1335-36 (alterations and emphases in Isaac A.).

Although the district court's opinion is not binding on

this Court, it is nonetheless persuasive, and this Court

adopts its reasoning as it relates to Sections 1396a(a)(8)

and 1396a(a)(10)(A).[5] This Court's decision to adopt the
reasoning of Isaac A. is further supported by its analysis
of the other EPSDT Provisions at Issue.

For instance, Section 1396a(a)(43)(A) directs states
to inform "all persons in the State who are under the age of 21
. . . of the availability of early and periodic screening,
diagnostic, and treatment services[.]" The provision does not
merely focus on a state's "aggregate compliance," Medina, 145 S.
Ct. at 2235 (quotation marks and citation omitted); it
explicitly requires "providing or arranging for the provision of
such screening services in all cases where they are requested"
by an eligible individual, see § 1396a(a)(43)(B). This language
creates a direct link between the requested service and the
specific individual under the age of twenty-one who was
determined to be eligible for EPSDT services, establishing a
mandatory obligation for the state to arrange for "corrective

_____

[5] This Court recognizes that in Medina, the Supreme Court
found that "mandatory terms" found in or near the any-qualified-
provider provision such as "shall" and "must" did not
automatically confer a right to bring a private action under
Section 1983. See Medina, 145 S. Ct. at 2236. As such, this
Court must give less weight to the district court's discussion
of this type of mandatory language in Isaac A. Cf. Isaac A., 775
F. Supp. 3d at 1335-36 (discussing language such as "must
provide" in Section 1396a(a)(10)(A)). This Court, however, for
the reasons discussed in the instant Order, finds that there are
other textual indicia in the EPSDT Provisions at Issue that
result in the provisions being privately enforceable by eligible
individuals.

treatment" after a need for such treatment "is disclosed by such
child health screening services[.]" See 42 U.S.C.
§ 1396a(a)(43)(C).

Furthermore, Section 1396d(r), which defines the scope
of EPSDT services, is replete with rights-creating terms that
are individual-centric. By way of example, Section 1396d(r)(5)
provides that the required EPSDT services include "[s]uch other
necessary health care, diagnostic services, treatment, and other
measures described in subsection (a) to correct or ameliorate
defects and physical and mental illnesses and conditions
discovered by the screening services, whether or not such
services are covered under the State plan." This language is
individual-centric because it makes clear that the state is
obligated to provide EPSDT services to address the specific
medical needs of eligible individuals as identified by that
individual's specific "screening services," regardless of
whether those services are covered under the state's medical
plan. See id.

By tethering the state's obligation to the eligible
individual's distinct medical need, Congress used clear and
unambiguous language to endow the individual with an enforceable
right to that care. Cf. Hawai`i Disability Rts. Ctr., 122 F.4th
at 371 ("The district court's analysis also did not consider
that students who are prescribed medically necessary ABA

23

services by DHS but for whom DOE does not deem ABA to be
educationally relevant cannot receive this medical accommodation
during school hours, thereby depriving Medicaid recipients with
Autism of their early and periodic screening, diagnostic and
treatment **rights** should their ABA medical needs extend to at-
school supports." (brackets and internal quotation marks
omitted) (emphasis added)). If it were otherwise, Congress would
not have included the language in Section 1396d(r)(5) that
services must be provided to individuals regardless of "whether
or not such services are covered under the State plan." This
phrasing is parallel to the rights-creating provisions found
enforceable in Talevski, which similarly "use clear rights-
creating language, speak in terms of the persons benefited, and
have an unmistakable focus on the benefited class." See
Talevski, 143 S. Ct. at 1458 (citation and internal quotation
marks omitted).

          This Court recognizes that the EPSDT Provisions at
Issue do not contain the words "right" or "rights." The
inclusion of such words in the statutory provisions at issue in
Talevski and the absence of such words in the any-qualified-
provider provision at issue in Medina was a factor in the
Supreme Court's holding that the latter provision did not confer
individually enforceable rights. See Medina, 145 S. Ct. at 2235.
This Court, however, does not read Medina to draw a formalistic

                              24

red line requiring the words "right" or "rights." In other words, the inclusion of the word "right" in a statute is not dispositive of the issue of whether that statute can be enforced by an individual through a Section 1983 action. Had the Supreme Court intended to impose that requirement, it would have said so in Medina. It did not. Further, such an interpretation would be overinclusive because it would automatically confer to individuals a right to bring Section 1983 claims to enforce any statute that includes the word "right." The interpretation would also be underinclusive insofar as it would exclude provisions, such as the provisions at issue in the instant case, that contain explicit "rights-creating terms," id. at 2229, but that do not contain the word "right."

     "Even if a statutory provision unambiguously secures rights, a defendant may defeat the presumption by demonstrating that Congress did not intend that § 1983 be available to enforce those rights." Talevski, 143 S. Ct. at 1459 (brackets, citation, and internal quotation marks omitted). Yamane narrowly focused on the textual argument that the EPSDT Provisions at Issue lack necessary rights-creating language, see Motion, Mem. in Supp. at 4-15, and he does not present any arguments that Congress did not intend that Section 1983 be available to enforce the EPSDT Provisions at Issue. Accordingly, this Court finds that Yamane

25

has not defeated the presumption that the EPSDT Provisions at Issue unambiguously secure individual rights.

In sum, while the Supreme Court in Medina held that the "any-qualified-provider" provision's focus on "aggregate compliance" suggested it addressed a state's obligations to the federal government, the EPSDT Provisions at Issue are fundamentally different. Because the EPSDT Provisions at Issue utilize mandatory, individually-focused language with right-creating terms, this Court concludes that Congress has unambiguously conferred upon eligible individuals a right to enforce the EPSDT Provisions at Issue through Section 1983, satisfying the rigorous standard set forth in Medina. Accordingly, Count III states a plausible claim for relief, and the Motion is denied.

**B.    *Watson* Remains Good Law**

This Court also notes that the Ninth Circuit, this district court, and other courts have addressed in pre-Medina decisions whether eligible individuals can enforce at least some of the EPSDT Provisions at Issue, specifically Sections 1396a(a)(10)(A) and 1396a(a)(43). See, e.g., Watson v. Weeks, 436 F.3d 1152, 1159-60 & n.8 (9th Cir. 2006); J.E. v.

<u>Wong</u>, 125 F. Supp. 3d 1099, 1106-08 (D. Hawai`i 2015); <u>Isaac A.</u>,
775 F. Supp. 3d at 1336-37 (collecting cases).[6]

Yamane acknowledges that <u>Medina</u> did not discuss or
address Section 1396a(a)(43). [Motion, Mem. in Supp. at 8.]
Yamane contends, however, that <u>Medina</u> calls into doubt the
binding effect of <u>Watson</u> on this Court. <u>See</u> <u>id.</u> at 9-10. Yamane
argues that the Supreme Court in <u>Medina</u> instructed lower courts
not to consider the reasoning and framework established in

_____

[6] One appellate court and at least two district courts have
concluded in post-<u>Medina</u> decisions that Section 1396a(a)(8), one
of the EPSDT provisions at issue, does not confer a privately
enforceable right under Section 1983. <u>See, e.g.,</u> <u>Lancaster by &
through Green v. Cartmell</u>, 162 F.4th 1063, 1068-70 (10th Cir.
2025) (relying on <u>Medina</u> to hold that Section 1396a(a)(8) does
not confer an individual right enforceable by the petitioners
through Section 1983); <u>Ramirez v. Oregon Health & Sci. Univ.</u>,
Case No. 3:24-cv-01470-SB, 2026 WL 353204, at *19 (D. Or.
Feb. 9, 2026) (finding that "Section 1396a(a)(8) does not confer
an individual right enforceable under Section 1983" (some
citations omitted) (citing <u>Medina</u>, 606 U.S. at 376-80, 385;
<u>Lancaster</u>, 162 F.4th at 1065-70)); <u>Sallaj v. Howard</u>, Case
No. 25-1119-DDC-BGS, 2026 WL 214346, at *14 (D. Kan. Jan. 27,
2026) (concluding that "§ 1396a(a)(8) does not confer an
individual right enforceable by the [plaintiff] through § 1983."
(internal quotation marks omitted) (quoting <u>Lancaster</u>, 162 F.4th
at 1070)). This Court has reviewed these thoughtfully written
opinions, but after thorough consideration, respectfully finds
the opinions unpersuasive to resolve the Motion. Those opinions
did not concern or address all of the EPSDT Provisions at Issue.
As discussed <i>supra</i> Discussion III.A, the EPSDT Provisions at
Issue constitute a mandatory directive focused squarely on
individuals. This Court having read and analyzed the EPSDT
Provisions at Issue "in their context and with a view to their
place in the overall statutory scheme," <u>Roberts</u>, 566 U.S. at 101
(quotation marks and citation omitted), finds that they utilize
mandatory, individually-focused language with right-creating
terms, thereby satisfying <u>Medina</u>.

Blessing v. Freestone, 520 U.S. 329 (1997), when assessing whether a spending-power statute creates an enforceable individual right. [Id. at 9 (citing Medina, 145 S. Ct. at 2234).] He submits that the Ninth Circuit in Watson relied heavily on the Blessing framework to hold that individuals could enforce Section 1396a(a)(10) through a private right of action. See id. Yamane asserts that, because the Supreme Court instructed lower courts to "resist the impulse" to consult Blessing, [id. (quotation marks omitted) (quoting Medina, 145 S. Ct. at 2234),] any precedent anchored in the Blessing framework, such as Watson, is no longer good law, see id. at 9-10. Yamane recognizes, however, that the Ninth Circuit in Watson relied "to some degree, on Gonzaga." [Id. at 10.] Yamane also recognizes that the Supreme Court in Medina "discussed Gonzaga with approval." [Id. at 11.]

This Court disagrees with Yamane's contention that Watson has been effectively overruled. While the Supreme Court warned lower courts to "resist the impulse" to rely on the Blessing analysis, Medina, 145 S. Ct. at 2234, it noted that "Talevski reaffirmed that 'Gonzaga sets forth our established method' for determining whether a spending-power statute confers individual rights," id. (citation omitted). Crucially, while the Ninth Circuit's analysis in Watson applied the Blessing framework, it did not rely exclusively on Blessing; rather, the

Ninth Circuit relied on the Gonzaga standard to hold that the
statutory language of Section 1396a(a)(10) unambiguously confers
upon eligible individuals a right to bring a Section 1983
action. See Watson, 436 F.3d at 1159-60 & n.8. In its analysis,
the Ninth Circuit held that Section 1396a(a)(10) "is phrased in
terms of the individuals benefited," id. at 1160 (citing
Gonzaga, 536 U.S. at 283-84, 122 S. Ct. 2268), "features
precisely the sort of rights-creating language identified in
Gonzaga as critical to demonstrating a congressional intent to
establish a new right," id. (citation and internal quotation
marks omitted), and contains "Gonzaga-approved rights-creating
language," id. (citation omitted).

        Furthermore, the distinction drawn in Watson between
rights-creating provisions and structural provisions mirrors the
analytical framework applied in Medina. In Watson, the Ninth
Circuit contrasted Section 1396a(a)(10) with another Medicaid
Act provision, Section 1396a(a)(5), noting that while the latter
was "a structural programmatic requirement" directed at the
state, the former contained "sharply different" wording that
"established entitlements to specific benefits for individuals."
Id. at 1161 (quotation marks and omitted). The Watson analysis
aligns with Medina, where the Supreme Court found the any-
qualified-provider provision "focus[ed] on aggregate compliance"
rather than individual rights. See Medina, 145 S. Ct. at 2235

(citation and internal quotation marks omitted). Because <u>Watson</u> employed the textual inquiry mandated by <u>Gonzaga</u> and reaffirmed by <u>Medina</u>, it is not "clearly irreconcilable" with intervening Supreme Court authority, and this Court remains bound by it. <u>See</u> <u>Miller v. Gammie</u>, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc) (explaining when prior Ninth Circuit precedent no longer binds a district court because it is clearly irreconcilable with intervening Supreme Court authority). Accordingly, because this Court is bound by the precedent of the Ninth Circuit and <u>Watson</u> is not clearly irreconcilable with <u>Medina</u>, the <u>Watson</u> decision provides independent grounds to deny the Motion. <u>See</u> <u>Watson</u>, 436 F.3d at 1159 (holding that Section 1396a(a)(10)(A) creates a Section 1983-enforceable right).

## <u>CONCLUSION</u>

On the basis of the foregoing, Yamane's Motion for Partial Judgment on the Pleadings, filed November 14, 2025, is DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 27, 2026.



/s/ Leslie E. Kobayashi
_____
Leslie E. Kobayashi
Senior U.S. District Judge

**HAWAI`I DISABILITY RIGHTS CENTER, ETC. VS. CHRISTINA KISHIMOTO, ETC., ET AL; CV 18-00465 LEK-KJM; ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**